**UNITED STATES of America, Appellee,**

v.

**Wayne HAYES, Defendant–Appellant.**

**No. 680, Docket 97–1190.**

United States Court of Appeals, Second Circuit

Argued Nov. 12, 1997.

Decided Jan. 16, 1998.

Robert L. Weinstein, Law Office of Robert L. Weinstein, New York City, for defendant-appellant.

Sanford M. Cohen, Asst. U.S. Atty., Brooklyn, NY (Susan Corkery, Asst. U.S. Atty., Brooklyn, NY, and Zachary W. Carter, U.S. Atty., Brooklyn, NY, on the brief), for appellee.

Before: VAN GRAAFEILAND, McLAUGHLIN, Circuit Judges, and GERSHON,* District Judge.

GERSHON, District Judge:

The primary issue presented by this appeal is the scope of a mandatory restitution order issued pursuant to one provision of the Violence Against Women Act, 18 U.S.C. § 2264. Concluding that the district court's restitution order was authorized by the stat-

* Honorable Nina Gershon of the United States District Court for the Eastern District of New York, sitting by designation.

ute, and that the additional issues raised by the defendant-appellant are without merit, we affirm.

Defendant-appellant Wayne Hayes and Patricia Bang were married in Ohio on August 15, 1989. After their marriage, the couple remained in Ohio; and their son, Ryan, was born in 1990. In 1991, Hayes was diagnosed with an aneurysm in the right frontal region of his brain. Following neurosurgery and a stroke, Hayes began to engage in hostile and aggressive behavior toward his wife.

In the fall of 1992, after Hayes threatened his wife with a hammer, she left Ohio, moved to her parents' home in New Jersey, and obtained an order of protection from a New Jersey court. In November 1993, the couple were divorced.

Notwithstanding the 1992 protection order and the divorce, Hayes instigated a campaign designed to coerce a reconciliation. Between 1992 and 1995, Hayes sent Ms. Hayes either directly, or through an intermediary, an estimated 600 letters demanding that she return to him and, in some instances, threatening to kidnap their son and injure or kill her if she did not. In addition to signed letters, Hayes sent anonymous, threatening letters, purportedly from the fictitious "Society for the Preservation of the Family," which threatened that a "Mr. Brewster" would murder Ms. Hayes if she refused to return to Ohio. Hayes's letters also contained detailed information about Ms. Hayes's daily activities, which established that he was monitoring her movements.

Three of Hayes's letters are the subjects of Counts Two, Three, and Four of the indictment, which charge Hayes with mailing threatening communications in violation of 18 U.S.C. § 876. The first of those letters, mailed on July 25, 1995, stated:

I've gone the legal route and that hasn't worked to see Ryan, so, now I've made a contact in New York to do things different-ly. I've learned these people don't fool around and they believe whats [sic] right is right. If something happens to Trish I'll

be legal guardian of my son. I don't want it to be like that way but I'm not giving up my son because my wife won't listen to reason.

The second letter, mailed on August 14, 1995, continued:

In my last note I told you I had made a contact in Brooklyn that would take care of her if she didn't bring Ryan and come home. I've sent the money and all they are waiting for is a call from me to go ahead. If something happens to Trish then I'll go get my son. But I really don't want to see her hurt and that's why I've been holding off on the call.

And, in the third letter, mailed on August 19, 1995, Hayes asserted his immediate intention to have Ms. Hayes "taken care of":

I'm making that call back to people in New York and let them take care of Trish. Hey, shit happens. Then I'll go to her parents [sic] home and walk up to the door and tell them I want Ryan. So now, as much as I still love and want her I'm putting out the order.

In addition to mailing the barrage of threatening letters, Hayes also traveled on numerous occasions from Ohio to New Jersey and surveilled Ms. Hayes's residence. In April 1994, Hayes was arrested after approaching Ms. Hayes's residence while brandishing a replica of a gun. Shortly thereafter, Ms. Hayes obtained a second order of protection against Hayes. Nonetheless, on September 17, 1995, Hayes traveled from Ohio, through the Eastern District of New York, to New Jersey and was again seen in the vicinity of Ms. Hayes's home. Hayes was arrested by Federal Bureau of Investigation agents in Ohio on December 20, 1995.

Hayes pled guilty to all four counts charged in the indictment on July 2, 1996. Count One charges that on or about September 17, 1995, Hayes traveled across state lines to violate orders of protection, in violation of 18 U.S.C. § 2262(a)(1).[1] Counts Two

---

1. Section 2262(a)(1) provides in pertinent part:
   A person who travels across a State line ... with the intent to engage in conduct that—

   (a)(i) violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment,

through Four charge that, on or about July 25, 1995, August 14, 1995, and August 19, 1995, respectively, Hayes mailed a letter in which he threatened to injure Ms. Hayes, in violation of 18 U.S.C. § 876.[2]

In February 1997, Hayes was sentenced to a period of thirty-seven months in custody, with three years of supervised release. Hayes was also ordered to pay restitution to Ms. Hayes in the amount of $76,768 within the first two years of his supervised release. Hayes does not appeal from that part of the order which awarded Ms. Hayes $10,000 in medical expenses. He appeals only from that part of the order which awarded sums for housing, lost income, and secure schooling. He argues, first, that the district court should not have awarded those sums because they exceed the losses caused by the offense of conviction; second, that the district court's findings as to loss are unsupported by the evidence; and, third, that the district court improperly delegated to the probation department the setting of a payment schedule. We reject each of these arguments for the reasons set forth below.

**Scope of Losses Included in Restitution Order**

■ Count One of the indictment, to which Hayes pled guilty, charges him with violating 18 U.S.C. § 2262(a)(1):

On or about September 17, 1995, within the Eastern District of New York and elsewhere, the defendant WAYNE HAYES did travel across a state line with the intent to engage in conduct that violated the portion of protection orders issued

by the Superior Court of New Jersey, Chancery Division, Family Part, that involved protection against repeated harassment of the person for whom the protection orders were issued, to wit: Patricia Hayes, and subsequently knowingly and intentionally engaged in such conduct.

(Title 18, United States Code, Sections 2262(a)(1) and 3551 et seq.)

Congress has enacted a specific, mandatory restitution statute, 18 U.S.C. § 2264, applicable to Section 2262 as well as to two other sections of the Violence Against Women Act, 18 U.S.C. §§ 2261 and 2261A, which prohibit interstate domestic violence and interstate stalking, respectively. See 18 U.S.C. § 2264(a).[3]

Section 2264 requires the district court to issue a restitution order directing the defendant to pay the victim "the full amount of the victim's losses as determined by the court." 18 U.S.C. § 2264(b)(1). Hayes argues that the losses awarded in this case improperly exceed the losses that resulted from the offense of conviction. In so arguing, Hayes relies heavily on the Supreme Court's decision in *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990).

*Hughey* involved the general, discretionary restitution provisions of the Victim and Witness Protection Act ("VWPA"), first codified as 18 U.S.C. §§ 3579 and 3580 and recodified, effective November 1, 1987, as 18 U.S.C. §§ 3663 and 3664. The Court in *Hughey* examined whether under those provisions a district court could order restitution for losses that did not stem from the conduct

---

or bodily injury to the person or persons for whom the protection order was issued; or (ii) would violate this subparagraph if the conduct occurred in the jurisdiction in which the order was issued; and
(B) subsequently engages in such conduct, shall be punished as provided in subsection (b).

**2.** Section 876 provides in pertinent part:

\*  \*  \*  \*  \*  \*

Whoever knowingly ... deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the

addressee or of another, shall be fined under this title or imprisoned not more than five years, or both.

**3.** Section 2264 was amended in 1996 by the Mandatory Victims Restitution Act ("MVRA"), the effective date of which is after Hayes's offense conduct but before his guilty plea and sentencing. Hayes argues that Section 2264 as amended should be applied in this case; the government argues that Section 2264 as originally enacted should be applied. Because the 1996 amendments left unaffected the provisions of Section 2264 on which we rely in deciding the issue before us, we need not resolve this dispute between the parties. In footnote 4, *infra,* the immateriality to this case of the amendments is discussed further.

underlying the offense of conviction. The defendant in *Hughey* had pled guilty to the unauthorized use of one stolen credit card and was ordered by the district court to reimburse the issuing bank not only for the losses stemming from his use of that card, but also for the losses stemming from his alleged unauthorized use of twenty additional credit cards. Reviewing the propriety of the restitution order, the *Hughey* Court examined in detail the language of the relevant statutory provisions. Emphasizing the repeated references in Section 3579 to "the offense" or "such offense", the Court held that a "straightforward reading" of the section "suggests strongly that restitution as authorized by the statute is intended to compensate victims only for losses caused by the conduct underlying the offense of conviction." *Hughey*, 495 U.S. at 416, 110 S.Ct. at 1982–83. The Court likewise concluded that the provision in Section 3580(a) requiring courts to consider "the amount of the loss sustained by any victim as a result of the offense," in determining whether to order restitution under Section 3579, "suggests persuasively that Congress intended restitution to be tied to the loss caused by the offense of conviction." *Id.* at 418, 110 S.Ct. at 1983–84.[4] The Court further emphasized the importance of "giving effect to the meaning and placement of the words chosen by Congress," *id.* (internal quotations omitted), and of understanding a general statutory term "in light of the specific terms that surround it." *Id.* at 419, 110 S.Ct. at 1984.

As the Court did in *Hughey*, we look to the language of the statute before us. Unlike the general, discretionary restitution provisions at issue in *Hughey*, Section 2264 requires the issuance of a restitution order for three, specific offenses: interstate domestic violence, prohibited by 18 U.S.C. § 2261; interstate stalking, prohibited by 18 U.S.C. § 2261A; and interstate violation of protection orders, prohibited by 18 U.S.C. § 2262. *See* 18 U.S.C. § 2264(a). For offenses under those provisions, Section 2264(b)(1) requires that the court issue an order of restitution directing the defendant to pay the victim "the full amount of the victim's losses as determined by the court." 18 U.S.C. § 2264(b)(1). Section 2264(b)(3) defines "the full amount of the victim's losses" as including

> any costs incurred by the victim for—
>
> (A) medical services relating to physical, psychiatric, or psychological care;
>
> (B) physical and occupational therapy or rehabilitation;
>
> (C) necessary transportation, temporary housing, and child care expenses;
>
> (D) lost income;
>
> (E) attorneys' fees, plus any costs incurred in obtaining a civil protection order; and
>
> (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2264(b)(3).

It is particularly significant for the purposes of this appeal that Section 2264(b)(3)(E) includes within "the full amount of the victim's losses" "attorneys' fees, plus any costs incurred in obtaining a civil protection order." 18 U.S.C. § 2264(b)(3)(E). The losses incurred in acquiring a protection order clearly predate the occurrence of the specific conduct that Hayes argues underlies the offense of conviction under Section 2262(a)(1), namely, the crossing of state lines in 1995 to violate the protection orders.[5]

---

4. Hayes argues that Section 3580, which was recodified as Section 3664, is also applicable in this case because, as amended in 1996, Section 2264(b)(2) provides that orders of restitution under that Section be issued and enforced "in accordance with section 3664." However, the amended Section 2264(b)(2) incorporates an amended version of Section 3664, which no longer contains the language relied on in *Hughey*. Similar language now appears in 18 U.S.C. § 3663. And, both as originally enacted and amended, Section 2264(a) explicitly provides that the court must order restitution "notwithstanding section 3663." 18 U.S.C. § 2264(a) (1994);

18 U.S.C. § 2264(a) (West 1997). Accordingly, even assuming *arguendo* that the 1996 amendments apply in this case, our analysis is unaffected by the reference in the amended Section 2264(b)(2) to the amended Section 3664.

5. Implicit in Hayes's argument that the losses awarded in this case exceed the losses resulting from the offense of conviction is the assumption that his conduct on or about September 17, 1995, when he crossed state lines to violate the protection orders, alone constitutes the "offense of conviction" under Section 2262(a)(1). The government suggests that the offense of convic-

Reading Section 2264(b)(3)(E) together with Section 2264(b)(3)(F), attorneys' fees and costs of obtaining a protection order are among the "losses suffered by the victim as a proximate result of the offense." 18 U.S.C. §§ 2264(b)(3)(E), 2264(b)(3)(F). That those costs, which date back to the acquisition of the protection orders, were considered by Congress to be among the losses that are proximately caused by the offense strongly suggests that Congress did not intend the other costs enumerated as among those that proximately result from the offense, including costs for child care, housing, and lost income, to be limited to amounts incurred only after the interstate activity.

This conclusion is supported by the broad language in the statute mandating restitution for "the full amount of the victim's losses," 18 U.S.C. § 2264(b)(1), and defining that amount to include "*any* costs incurred by the victim" for the losses enumerated in the subsections to Section 2264(b)(3). 18 U.S.C. § 2264(b)(3) (emphasis added). A straightforward reading of Section 2264 that "giv[es] effect to the meaning and placement of the words chosen by Congress," *Hughey*, 495 U.S. at 418, 110 S.Ct. at 1983–84 (internal quotations omitted) thus authorizes restitution for more than merely those losses occurring after a defendant has crossed state lines to violate a protection order. We therefore conclude that the district court properly took into account losses incurred by Ms. Hayes as a result of conduct by Hayes extending back to the time Ms. Hayes obtained the 1992 and 1994 protection orders.

**Findings of Loss by the District Court**

■ Hayes next argues that "in view of the insufficient evidence before the court, the findings as to loss are inaccurate." [6] In making its findings, the district court had before

it three, unrebutted documents from Ms. Hayes which support its findings: an affidavit of loss, a chart further enumerating her losses, and an extremely detailed letter attached to the Presentence Report which sets forth the overwhelming harm caused by Hayes's behavior. The letter includes a vivid description of Ms. Hayes's need, in the face of Hayes's unyielding harassment, to leave her home and her place of employment (she both lived and worked with Hayes), to move to the protection of her parents' home, and to place her son in secure schooling and camp. That the district court carefully reviewed those documents is reflected in its refusal to include in the grant of restitution either $650 for out-of-pocket expenses that it deemed unsubstantiated, or $5,000 for personal property which Ms. Hayes had abandoned in Ohio and which the court concluded she could now safely retrieve in light of Hayes's incarceration. Given the documentation discussed above, we hold that the record fully supports the district court's findings with regard to lost income, child care, schooling and camp.

■ The district court also credited Ms. Hayes's claim for "46 months to stay secure at parents based on $600.00 apartment rent." Hayes argues that this amount should not have been included in the restitution order, as Ms. Hayes does not assert that she actually incurred any expense for housing. Under 18 U.S.C. § 2264(b)(4)(B)(ii), however, the court may not decline to issue a grant of restitution on the ground that "the victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance *or any other source*." 18 U.S.C. § 2264(b)(4)(B)(ii) (emphasis added). Thus, even if Ms. Hayes's parents have borne the cost of securely housing Ms. Hayes and her son, their contribution to this expense would

---

tion under Section 2262(a)(1) could be viewed as including not only the crossing of state lines, but also a course of conduct dating back to the obtaining of the protection orders, the issuance of which was essential to Hayes's conviction under Section 2262(a)(1).

We need not now delineate the precise scope of the conduct underlying the offense of conviction under Section 2262(a)(1), because we hold that Section 2264 by its terms supports the grant of restitution in this case for losses dating back to the issuance of the orders of protection.

**6.** In his opening appellate brief, Hayes argued that "[t]he court erred in failing to make specific findings with respect to Ms. Hayes [sic] alleged losses...." However, in his reply brief, Hayes stated that he had not intended to argue that the district court failed to make sufficiently detailed findings; instead, his position is that the court's findings were inaccurate "in view of the insufficient evidence before the court."

not preclude the inclusion of reasonable housing costs in the restitution order.

## The Payment Schedule

 Finally, nothing in the record supports the claim that the court delegated to the probation department "the judicial functions inherent in the grant of restitution." *United States v. Porter*, 41 F.3d 68, 71 (2d Cir.1994). The district court itself found that Hayes had the financial wherewithal to pay the restitution awarded and set a payment schedule directing that the payments be made within the first two years of the defendant's supervised release. This schedule was not vague, as defendant argues, but concrete. And the district court expressly recognized at Hayes's sentencing that the court, rather than the probation department, must fix the schedule of restitution by the defendant.

The statement in the judgment that, after continuing disclosure of Hayes's financial situation, the district court "will set a schedule of payments with the probation department" is not to the contrary. For reasons not apparent from the record, no additional order regarding payments was ever issued. The reference in the judgment to such an order merely suggests that the court contemplated issuing an additional order regarding the schedule of payments after receiving supplemental information from the probation department; it does not establish an abdication of the judicial role inherent in granting restitution.

Hayes argues that the judgment should have included a credit to him for the monthly amounts that "have been automatically diverted from [his] disability income into an account in his son's name." Hayes is in fact entitled to no such credit. His son Ryan receives the payments in question because Ryan is entitled, pursuant to 42 U.S.C. § 402(d), to child's insurance benefits as a child under the age of eighteen who is dependent on a parent (Hayes) receiving disability insurance benefits. *See* 42 U.S.C. § 402(d)(1). Hayes himself has no independent claim to the amounts paid to Ryan under Section 402(d). Thus, the omission from the judgment of any credit to Hayes for those payments was not error.

## CONCLUSION

For the aforesaid reasons, the judgment of the district court is affirmed.