# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2752

_____

United States of America

*Plaintiff - Appellee*

v.

Robert M. Fast

*Defendant - Appellee*

------------------------------

Vicky, Child Pornography Victim

*Interested party - Appellant*

_____

No. 12-2769

_____

In re: Vicky, Child Pornography Victim

*Petitioner*

_____

Appeals from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 15, 2012
Filed: March 11, 2013

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Robert M. Fast pled guilty to one count of receiving and distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2). The district court[1] ordered him to pay $3,333 restitution to Vicky – the pseudonym for the child-pornography victim whose images were on Fast's computer – under 18 U.S.C. § 2259. Vicky challenges the restitution award by direct appeal and in a petition for mandamus.[2] She argues that Fast need not proximately cause the losses defined in subsections 2259(b)(3)(A) through (E) to be liable for them, and that the district court misinterpreted the "full amount of [her] losses" under section 2259(b)(1). Because she lacks standing as a nonparty to bring a direct appeal, this court grants the motions to dismiss by Fast and the government. Having jurisdiction over her mandamus petition under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771(d)(3), this court denies her petition.

I.

The CVRA grants crime victims, including Vicky, the "right to full and timely restitution as provided in law." **18 U.S.C. § 3771(a)(6)**. The district court must order

_____

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2] This court granted Vicky's request to waive the 72-hour statutory deadline for deciding her mandamus petition. *See* **18 U.S.C. § 3771(d)(3)**.

restitution.  *Id.* **§ 2259(a)**, **(b)(4)(A)**.  "The language of 18 U.S.C. § 2259 reflects a broad restitutionary purpose."  *In re Amy Unknown*, 701 F.3d 749, 760 (5th Cir. 2012) (en banc) (citations omitted); *accord* *United States v. Julian*, 242 F.3d 1245, 1247 (10th Cir. 2001).  "Restitution" is the "full amount of the victim's losses as determined by the court," including the costs enumerated in subsections 2259(b)(3)(A) through (F).  **18 U.S.C. § 2259(b)(1), (3)**.  The district court resolves "[a]ny dispute as to the proper amount or type of restitution . . . by the preponderance of the evidence."  *Id.* **§ 3664(e)**.  The government bears the "burden of demonstrating the amount of the loss sustained by a victim as a result of the offense."  *Id.*

Vicky documents $1,224,697.04 in losses from her sexual abuse and the distribution of the pornographic images.  Before Fast's sentencing, she sought $952,759.81 restitution (having previously collected $271,937.23 from other defendants).  The government initially requested "at least $10,000" restitution.  The district court ruled that Fast need not have proximately caused the losses defined in subsections 2259(b)(3)(A) through (E) to be liable for them.  *United States v. Fast*, 820 F. Supp. 2d 1008, 1010 (D. Neb. 2011).  The court initially ordered Fast to pay $19,863.84 restitution.  *Id.*  On appeal, the government agreed with Fast that proximate cause is required.  This court remanded to the district court to reconsider Vicky's restitution award (denying her motion to intervene as moot).  *United States v. Fast*, No. 11-3455, at *1 (8th Cir. May 15, 2012).

On remand, the district court determined "that proximate cause is required for each element of restitution under 18 U.S.C. § 2259."[3]  *United States v. Fast*, 876 F. Supp. 2d 1087, 1088  (D. Neb. 2012).  It found Fast liable for losses accrued after June 25, 2010 — when he began committing the crime.  *Id.* at 1089.  The district court concluded that Fast "proximately caused harm to 'Vicky' that directly resulted

---

[3]On remand, the district court denied as untimely Vicky's motion to intervene. She does not appeal that ruling.

in compensable injury and damage to her in the sum of $3,333." *Id.* at 1090. This amount consisted of "$2,500 for medical and psychiatric care, occupational therapy, and lost income under 18 U.S.C. § 2259(b)(3)(A), (B), & (D)," and $833 for "attorney fees and costs under 18 U.S.C. § 2259(b)(3)(E)." *Id.* at 1088.

## II.

Fast and the government move to dismiss Vicky's direct appeal of the restitution order, arguing that she lacks standing because she is not a party to the case. "Standing is a fundamental element of federal court jurisdiction." *Curtis v. City of Des Moines*, 995 F.2d 125, 128 (8th Cir. 1993), *citing Sierra Club v. Morton*, 405 U.S. 727, 732 (1972). Those failing to "intervene or otherwise attain party status may not appeal a district court's judgment." *Id.* (citation omitted). "[A]ll Courts of Appeals to have addressed this issue have concluded that nonparties cannot directly appeal a restitution order entered against a criminal defendant." *United States v. Stoerr*, 695 F.3d 271, 277 (3d Cir. 2012) (citations omitted); *see In re Amy Unknown*, 701 F.3d at 756; *United States v. Alcatel-Lucent France, SA*, 688 F.3d 1301, 1307 (11th Cir. 2012) (per curiam); *United States v. Monzel*, 641 F.3d 528, 542 (D.C. Cir.), *cert. denied*, 132 S. Ct. 756 (2011); *United States v. Aguirre-Gonzalez*, 597 F.3d 46, 53-55 (1st Cir. 2010); *In re Acker*, 596 F.3d 370, 373 (6th Cir. 2010) (per curiam); *United States v. Hunter*, 548 F.3d 1308, 1315-16 (10th Cir. 2008); *United States v. United Sec. Sav. Bank*, 394 F.3d 564, 567 (8th Cir. 2004) (per curiam); *United States v. Mindel*, 80 F.3d 394, 398 (9th Cir. 1996); *United States v. Grundhoefer*, 916 F.2d 788, 793 (2d Cir. 1990); *see also United States v. Laraneta*, 700 F.3d 983, 986 (7th Cir. 2012) (finding "no quarrel" with the result that "a crime victim cannot appeal from a denial of restitution in a criminal case because the victim is not a party").

Vicky did not successfully intervene, and the CVRA does not grant her party status. The CVRA grants the *government* the right to assert a victim's rights on direct

-4-

appeal, **18 U.S.C. § 3771(d)(4)**, and details when a victim may re-open a plea or sentence through a motion, *id.* **§ 3771(d)(5)**; *see Hunter*, 548 F.3d at 1315-16 ("[Section 3771(d)(5)] makes no mention of a direct appeal."). The CVRA grants a victim the right to petition for mandamus. **18 U.S.C. § 3771(d)(3)**. "Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction." *Id.* **§ 3771(d)(6)**. Allowing victims to appeal would "erode the CVRA's attempt to preserve the Government's discretion." *In re Unknown*, 701 F.3d at 757; *accord Hunter*, 548 F.3d at 1316. "That Congress included these provisions but did *not* provide for direct appeals by crime victims is strong evidence that it did not intend to authorize such appeals." *Monzel*, 641 F.3d at 542 (emphasis in original) ("[T]he CVRA's 'carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" (emphasis in original), *quoting Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993) (internal quotation marks omitted)). The CVRA does not allow Vicky to appeal directly.

Vicky invokes 28 U.S.C. § 1291. But "§ 1291's broad jurisdictional grant does not permit us to ignore the requirement that the appellant have standing to appeal." *Stoerr*, 695 F.3d at 277 n.5 (citation omitted). Vicky cites several cases where courts have heard non-party appeals. None, except *United States v. Kones*, 77 F.3d 66, 68 (3d Cir. 1996), allowed a non-party appeal that would alter a defendant's sentence. *See Monzel*, 641 F.3d at 542-43. A criminal restitution order is part of a defendant's sentence. *Id.* at 541; *see United Sec. Sav. Bank*, 394 F.3d at 567. "A crime victim does not have standing to appeal a district court's restitution order." *United Sec. Sav. Bank* at 567; *Aguirre-Gonzalez*, 597 F.3d at 54 ("[C]rime victims have no right to directly appeal a defendant's criminal sentence . . . .").

In *Kones*, "a purported victim sought to appeal the district court's conclusion that she was not entitled to restitution." *Stoerr*, 695 F.3d at 277 n.5, *citing Kones*, 77 F.3d at 68. "Without addressing the purported victim's standing to appeal, [the Third

Circuit] noted in one sentence that [it] had appellate jurisdiction under 28 U.S.C. § 1291." *Id.*, *citing **Kones***, 77 F.3d at 68. The Third Circuit later held that it was not "bound by the bald jurisdictional statement in *Kones*" — a "'drive-by jurisdictional ruling[ ],' in which jurisdiction 'ha[s] been assumed by the parties, and . . . assumed without discussion by the [c]ourt,' does not create binding precedent." *Id.* (alterations in original), *quoting **Steel Co. v. Citizens for a Better Env't***, 523 U.S. 83, 91 (1998); *see **Monzel***, 641 F.3d at 541 n.13.

In the *Curtis* case, this court allowed nonparties to appeal because they had "an interest in the cause litigated and participated in the proceedings actively enough to make [them] privy to the record . . . [even though] [they] w[ere] not named in the complaint and did not intervene." ***Curtis***, 995 F.2d at 128 (second alteration in original) (omission in original) (citation and internal quotation marks omitted). *Curtis*, unlike here, was a civil case and did not alter the defendant's sentence.

Vicky argues that because the CVRA grants victims the "right" to restitution, *see* **18 U.S.C. § 3771(a)(6)**, she has an "injury" that gives her standing to appeal. *But see **United Sec. Sav. Bank***, 394 F.3d at 567 ("The direct, distinct, and palpable injury in a criminal sentencing proceeding plainly falls only on the defendant who is being sentenced."). But granting victims a right to restitution neither makes them a party to the case, nor gives them a right to appeal. *See, e.g.*, ***Aguirre-Gonzalez***, 597 F.3d at 53 ("Notwithstanding the rights reflected in the restitution statutes, crime victims are not parties to a criminal sentencing proceeding . . . [and] may not appeal a defendant's criminal sentence." (internal citations and citations omitted)). "[T]he CVRA expressly identifies the avenues of appellate review of a district court's denial of restitution . . . and neither of those avenues entitles a crime victim to direct appeal." ***Alcatel-Lucent France, SA***, 688 F.3d at 1306; *see also **Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis***, 444 U.S. 11, 19 (1979) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."); *see also **Aguirre-Gonzalez***, 597 F.3d at 54 ("The Federal Rules of

Civil Procedure allow non-parties to intervene to assert their rights. The Federal Rules of Criminal Procedure contain no comparable provision." (citation omitted)).

Vicky cites additional cases where a non-party crime victim was allowed to appeal.[4] *See **United States v. Yielding***, 657 F.3d 722, 726 n.2 (8th Cir. 2011) (holding the nonparty had "standing to appeal" because "it [was] bound or adversely affected by an injunction"); *In re Siler*, 571 F.3d 604, 608-09 (6th Cir. 2009) (allowing nonparties to appeal the use of a presentencing report in a civil suit); ***United States v. Perry***, 360 F.3d 519, 523-24 (6th Cir. 2004) (allowing a non-party victim to appeal an order vacating a lien securing her restitution award); ***Doe v. United States***, 666 F.2d 43, 45-46 (4th Cir. 1981) (allowing a non-party victim to appeal the use of sexual history evidence). "But none of the cases she cites involved a request by a victim to alter a defendant's sentence." *See **Monzel***, 641 F.3d at 543; *accord **Aguirre-Gonzalez***, 597 F.3d at 54; ***Hunter***, 548 F.3d at 1314.

Vicky cites several cases that allowed other nonparties to appeal in criminal cases. *See **United States v. Antar***, 38 F.3d 1348, 1355-56 (3d Cir. 1994) (permitting the press to appeal a district court order sealing a voir dire transcript); ***In re Subpoena to Testify Before Grand Jury Directed to Custodian of Records***, 864 F.2d 1559, 1561 (11th Cir. 1989) (allowing the press to appeal the scope of a closure order); ***Anthony v. United States***, 667 F.2d 870, 878 (10th Cir. 1982) (allowing

---

[4]Vicky also cites a letter from Senator Jon Kyl to the U.S. Justice Department, stating that the CVRA was "not intended to block crime victims from taking an ordinary appeal from an adverse decision affecting their rights (such as a decision denying restitution) under 28 U.S.C. § 1291." **Letter from Senator Jon Kyl to Attorney Gen. Eric Holder** (June 6, 2011), *reprinted in* **157 Cong. Rec. S3609** (June 8, 2011). Statements made after a statute's enactment are "not a legitimate tool of statutory interpretation." ***Bruesewitz v. Wyeth LLC***, 131 S. Ct. 1068, 1081 (2011); *see **Stoerr***, 695 F.3d at 280 n.7 ("[A] statement by an individual senator does not 'amend the clear and unambiguous language of a statute.'" (quoting ***Barnhart v. Sigmon Coal Co.***, 534 U.S. 438, 457 (2002))).

appeal of discovery rulings); *United States v. Hubbard*, 650 F.2d 293, 314 (D.C. Cir. 1980) (allowing appeal of an order unsealing documents found during a search); *United States v. Briggs*, 514 F.2d 794, 799 (5th Cir. 1974) (exercising jurisdiction over an appeal by unindicted co-conspirators challenging an order refusing to strike their names from the indictment). These "appeals all related to specific trial issues and did not disturb a final judgment." *Hunter*, 548 F.3d at 1314; *see In re Amy Unknown*, 701 F.3d at 756 ("[These cases] allowed non-parties to appeal discrete pre-trial issues . . . unrelated to the merits of the criminal cases from which they arose." (citations omited)).

Vicky claims that jurisdiction is nonetheless proper under the collateral order doctrine. *See Mohawk Industries, Inc. v. Carpenter*, 130 S. Ct. 599, 605 (2009). "[U]nder the collateral order doctrine, prejudgment appellate review is allowed in a criminal case for trial court orders which [(1)] conclusively determine the disputed question, [(2)] resolve an important issue completely separate from the merits of the action, and [(3)] are effectively unreviewable on appeal from final judgment." *United States v. Ivory*, 29 F.3d 1307, 1311 (8th Cir. 1994). She fails the second prong "because the issue of restitution is part and parcel of the criminal sentence." *Alcatel-Lucent France, AS*, 688 F.3d at 1305 n.1. She also fails the third prong because the CVRA permits the government to appeal (and, as discussed below, allows her to petition for mandamus). *See* **18 U.S.C. § 3771(d)(3)-(4)**. Because Vicky lacks standing, the motions to dismiss her direct appeal are granted. She may proceed only by mandamus. *Id.* **§ 3771(d)(3)**.

III.

According to Fast and the government, the traditional standard for mandamus applies, requiring Vicky to show that (1) she lacks "adequate alternative means" to obtain relief, (2) her right to "issuance of the writ is clear and indisputable," and (3) "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for*

***Dist. of Columbia***, 542 U.S. 367, 380-81 (2004) (internal citations, citations, and internal quotation marks omitted); ***Kreditverein der Bank Austria Creditanstalt für Niederösterreich und Bergenland v. Nejezchleba***, 477 F.3d 942, 948 (8th Cir. 2007), *citing* ***Mallard v. U.S. Dist. Ct. for the Dist. of Iowa***, 490 U.S. 296, 309 (1989). Vicky urges this court to apply the standard of review for a direct appeal.

The CVRA states:

> If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus. The court of appeals may issue the writ on the order of a single judge . . . . The court of appeals shall take up and decide such application forthwith within 72 hours after the petition has been filed. . . . If the court of appeals denies the relief sought, the reasons for the denial shall be clearly stated on the record in a written opinion.

**18 U.S.C. § 3771(d)(3)**. That a court must "take up and decide" the petition within 72 hours "says nothing about the standard of review." ***Monzel***, 641 F.3d at 533-34; *accord* ***In re Amy Unknown***, 701 F.3d at 758 n.6. Rather, "[t]he very short timeline in which appellate courts must act, and the fact that a single circuit judge may rule on a petition, confirm the conclusion that Congress intended" the traditional standard for mandamus to apply. ***In re Amy Unknown***, 701 F.3d at 758; ***In re Antrobus***, 519 F.3d 1123, 1130 (10th Cir. 2008) ("It seems unlikely that Congress would have intended *de novo* review in 72 hours of novel and complex legal questions . . . .").

"That Congress called for 'mandamus' strongly suggests it wanted 'mandamus.'" ***Monzel***, 641 F.3d at 533, *citing* ***Morissette v. United States***, 342 U.S. 246, 263 (1952); ***In re Acker***, 596 F.3d at 372. Had Congress intended an ordinary appellate standard of review, it could have given victims a right to direct appeal. *See* ***In re Antrobus***, 519 F.3d at 1129, *citing* **18 U.S.C. § 3771(d)(4)**. "That Congress expressly provided for 'mandamus' in § 3771(d)(3) but ordinary appellate review in

§ 3771(d)(4) invokes 'the usual rule that when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.'" *Monzel*, 641 F.3d at 533, *quoting Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004).

Vicky argues that applying the traditional standard for mandamus renders superfluous the right to petition for mandamus under the CVRA, because the All Writs Act, 28 U.S.C. § 1651, already grants that right. But the CVRA, unlike the All Writs Act, requires the court to "take up and decide" the petition within 72 hours and to issue a "written opinion" if it denies relief. *See* **18 U.S.C. § 3771(d)(3)**. Thus, the CVRA affords victims "more rights than they would otherwise have." *In re Antrobus*, 519 F.3d at 1129-30.

Vicky claims four circuits support her position. With little discussion, the Second Circuit opined, "It is clear . . . that a petitioner seeking relief pursuant to the [CVRA's] mandamus provision . . . need not overcome the hurdles typically faced by a petitioner . . . ." *In re W.R. Huff Asset Mgmt. Co., LLC*, 409 F.3d 555, 562 (2d Cir. 2005). The Ninth Circuit stated, "The CVRA creates a unique regime that does, in fact, contemplate routine interlocutory review of district court decisions denying rights asserted under the statute." *Kenna v. U.S. Dist. Court for C.D. Cal.*, 435 F.3d 1011, 1017 (9th Cir. 2006). Without needing to reach the issue, the Third Circuit commented that "mandamus relief is available under a different, and less demanding, standard under 18 U.S.C. § 3771 in the appropriate circumstances." *In re Walsh*, 229 Fed. Appx. 58, 60 (3d Cir. 2007) (per curiam) (unpublished). The Eleventh Circuit simply granted the writ without discussing any standard. *See In re Stewart*, 552 F.3d 1285, 1288-89 (11th Cir. 2008) (per curiam). *But see In re Stewart*, 641 F.3d 1271, 1274-75 (11th Cir. 2011) (per curiam) (questioning the prior ruling). These decisions, lacking detailed analysis, are unpersuasive. *See In re Amy Unknown*, 701 F.3d at 758 n.6 ("The lack of reasoning . . . fails to convince us that anything other than traditional mandamus standards [apply]."); *In re Antrobus*, 519 F.3d at 1128

-10-

("With respect to our sister circuits, and aware of the time pressures under which they operated, we see nothing in their opinions explaining why Congress chose to use the word *mandamus* rather than the word *appeal*." (emphases in original)).

This court therefore applies the traditional standard for mandamus. "The issuance of a writ of mandamus is an extraordinary remedy reserved for extraordinary situations." ***In re MidAmerican Energy Co.***, 286 F.3d 483, 486 (8th Cir. 2002) (per curiam), *citing **Gulfstream Aerospace Corp. v. Mayacamas Corp.***, 485 U.S. 271, 289 (1988). "'[O]nly exceptional circumstances amounting to a judicial usurpation of power will justify the invocation of this extraordinary remedy.'" ***In re Amy Unknown***, 701 F.3d at 757 (alteration in original), *quoting **Kerr v. U.S. Dist. Court for N. Dist. of Cal.***, 426 U.S. 394, 402 (1976). "Issuance of the writ is largely a matter of discretion . . . ." ***Id.*** at 757, *citing **Schlagenhauf v. Holder***, 379 U.S. 104, 112 n.8 (1964).

Vicky meets the first traditional condition for mandamus – no adequate alternative means to obtain relief – because mandamus is her only avenue for relief. *See **Cheney***, 542 U.S. at 380-81 ("[The first] condition [is] designed to ensure that the writ will not be used as a substitute for the regular appeals process." (citation omitted)). She must show that the district court clearly and indisputably erred in the restitution amount it awarded her, and, if so, that the writ is appropriate.

IV.

Vicky argues that, to be liable, Fast need not have proximately caused the losses defined in subsections 2259(b)(3)(A) through (E). This court reviews de novo the district court's interpretation of section 2259. ***United States v. Schmidt***, 675 F.3d 1164, 1167 (8th Cir. 2012). All but one circuit court to have addressed the issue read subsections 2259(b)(3)(A) through (E) to require proof of proximate cause. ***Laraneta***, 700 F.3d at 990; ***United States v. Burgess***, 684 F.3d 445, 459 (4th Cir.

2012); *United States v. Kearney*, 672 F.3d 81, 95-96, 99 (1st Cir. 2012); *United States v. Evers*, 669 F.3d 645, 659 (6th Cir. 2012); *United States v. Aumais*, 656 F.3d 147, 153 (2d. Cir. 2011); *Monzel*, 641 F.3d at 536-37; *United States v. McDaniel*, 631 F.3d 1204, 1208-09 (11th Cir. 2011); *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999); *United States v. Crandon*, 173 F.3d 122, 125-26 (3d Cir. 1999). *Contra*, *In re Amy Unknown*, 701 F.3d at 762, 773 (interpreting subsections 2259(b)(3)(A) through (E) not to require proof of proximate cause). "The 'clear and indisputable' test is applied after" the court construes the statute. *Gov't of Virgin Islands v. Douglas*, 812 F.2d 822, 832 n.10 (3d Cir. 1987); *see In re Wickline*, 796 F.2d 1055, 1056-57 (8th Cir. 1986).

Section 2259 defines the "full amount of the victim's losses" as including costs for:

> (A) medical services relating to physical, psychiatric, or psychological care;
>
> (B) physical and occupational therapy or rehabilitation;
>
> (C) necessary transportation, temporary housing, and child care expenses;
>
> (D) lost income;
>
> (E) attorneys' fees, as well as other costs incurred; and
>
> (F) any other losses suffered by the victim *as a proximate result of the offense*.

**18 U.S.C. § 2259(b)(3)** (emphasis added). Vicky claims that only the losses in the last subsection require proof of proximate cause. She invokes the "rule of the last antecedent" to conclude that the limiting clause – "as a proximate result of the offense" – in the last item of a series modifies only that last item. *See Cincinnati Ins.*

*Co. v. Bluewood, Inc.*, 560 F.3d 798, 803 (8th Cir. 2009), *quoting **Barnhart v. Thomas***, 540 U.S. 20, 26 (2003). "The rule of the last antecedent, however, 'is not an absolute and can assuredly be overcome by other indicia of meaning.'" ***United States v. Hayes***, 555 U.S. 416, 425-26 (2009), *quoting **Barnhart***, 540 U.S. at 26. Fast and the government counter with the canon: "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." ***McDaniel***, 631 F.3d at 1209 (internal quotation marks omitted), *quoting **Porto Rico Ry., Light & Power Co. v. Mor***, 253 U.S. 345, 348 (1920) (finding "[n]o reason" why the clause at issue "should not be read as applying to" all preceding phrases); *see also **Fed. Mar. Comm'n v. Seatrain Lines, Inc.***, 411 U.S. 726, 734 (1973) ("It is . . . a familiar canon of statutory construction that [catchall] clauses are to be read as bringing within a statute categories similar in type to those specifically enumerated." (citation omitted)).

Neither canon is absolute. *See **Barnhart***, 540 U.S. at 26, 28-29; ***Porto Rico Ry., Light & Power Co.***, 253 U.S. at 348. More persuasive here is the Second Circuit's reasoning in *United States v. Hayes*, 135 F.3d 133, 137-38 (2d Cir. 1998). There, the statute at issue, section 2264(b)(3), is identical to section 2259(b)(3), except that its subsection (E) reads: "attorneys' fees, plus any costs incurred in obtaining a civil protection order." ***Hayes***, 135 F.3d at 137, *quoting* **18 U.S.C. § 2264(b)(3)**. The Second Circuit held, "Reading [subs]ection 2264(b)(3)(E) together with [subs]ection 2264(b)(3)(F), attorneys' fees and costs of obtaining a protection order are *among the 'losses suffered by the victim as a proximate result of the offense*.'" ***Id.*** at 138 (emphasis added) (citations omitted). Vicky interprets *Hayes* to mean that "the losses listed in subsections (A)-(E) are automatically . . . proximately caused by the defendant's conduct." Rather, the Second Circuit held that section 2264(b)(3) "*authorizes* restitution" for the specific losses in subsections 2264(b)(3)(A) through (E). *See **id.*** (emphasis added). The "proximate result" clause in the last subsection 2264(b)(3)(F) shows that Congress considered the costs in

subsections 2264(b)(3)(A) through (E) "among the losses that are proximately caused by the offense," but that causation still must be proved in each case. *See id.*

Similarly, the First Circuit – interpreting section 2259 at issue here – reasoned that the "express inclusion [of the specific losses in subsections 2259(b)(3)(A) through (E)] . . . indicates that Congress believed such damages were sufficiently foreseeable to warrant their enumeration in the statute." *Kearney*, 672 F.3d at 97; *see United States v. Gamble*, — F.3d —— , ——, 2013 WL 692512, at *6 (6th Cir. Feb. 27, 2013) ("[T]he list of recoverable losses that the statute provides confirms the breadth of what is a foreseeable consequence of defendants' actions."). That section 2259 enumerates those losses "bears emphasis because at the same time Congress enacted § 2259, it enacted another restitution statute that did not enumerate categories of losses." *Kearney*, 672 F.3d at 97. Instead, that statute "stated that 'the term "full amount of the victims losses" means all losses suffered by the victim as a proximate result of the offense.'" *Id.* (footnote omitted), *quoting* **Pub. L. 103-322, § 250002, 108 Stat. 2082, 2083** (codified at **18 U.S.C. § 2327(b)(3)**). Contrary to Vicky's assertion, the variation among these restitution statutes does not mean that Congress eliminated the proximate cause requirement for the specifically enumerated losses in subsections 2259(b)(3)(A) through (E). Rather, variances among these restitution statutes "demonstrate that Congress viewed particular offenses as causing foreseeable risks of certain losses [meriting enumeration] in the[se] [restitution] statutes." *Id.* at 97 n.13. The First Circuit concluded that, although Congress determined that restitution offenses foreseeably cause the losses in subsections (A) through (E), the defendant – to be liable – still must proximately cause the victim's losses. *See id.* at 95-97, 99-100 (holding "that the proximate cause requirement was satisfied . . . because [the defendant's] actions resulted in identifiable losses as outlined in the expert reports and Vicky's victim impact statements" (footnote and citation omitted)).

This court agrees. Congress determined that these restitution offenses *typically* proximately cause the losses enumerated in subsections 2259(b)(3)(A) through (E).

-14-

Congress did not mean that a *specific* defendant *automatically* proximately causes those losses *in every case*. The government still has to prove that the defendant proximately caused those losses. *See* **18 U.S.C. § 2259(a)**, **(b)(3)(A)-(F)**, **(c)** ("'[V]ictim' means the individual harmed *as a result of a commission of a crime* under this chapter" (emphasis added)); *id.* **§ 3664(e)**; *Laraneta*, 700 F.3d at 990-92; *Kearney*, 672 F.3d at 95-97.[5]

V.

Vicky contends that the district court failed to award her the statutorily mandated "full amount of [her] losses." *See* **18 U.S.C. § 2259(b)(1)**. Because issuance of the writ of mandamus is an extraordinary remedy, she must show that the district court clearly and indisputably erred. Restitution is mandatory under section 2259. *Id.* **§ 2259(a)**, **(b)(4)(A)**. The restitution order "shall be issued and enforced in accordance with section 3664." *Id.* **§ 2259(b)(2)**. Under that section, "[a]ny dispute as to the proper amount or type of restitution *shall be resolved by the court by the preponderance of the evidence*." *Id.* **§ 3664(e)** (emphasis added). The government bears the "burden of demonstrating the amount of the loss sustained by a victim as a result of the offense." *Id.*

"[I]njury to the child depicted in the child pornography . . . *is a readily foreseeable result* of distribution and possession of child pornography." *Kearney*, 672 F.3d at 97 (emphasis added). Proving proximate cause may require nothing more than "expert reports and . . . victim impact statements" about the costs enumerated in subsections (A) through (E) that the victim incurred after the defendant's offense began. *See, e.g.*, *id.* at 96-100 (discussing proximate cause). Determining the "full

[5]*See also* **S. Rep. No. 103-138**, at 56 (1993) (noting that "section [2259] requires sex offenders to pay costs incurred by victims as a *proximate result* of a sex crime" (emphasis added)).

-15-

amount of the victim's losses" that a defendant's offense caused is best left to the district court in the first instance. *See* **18 U.S.C. § 2259(b)(1)** ("[T]he defendant [shall] pay . . . the full amount of the victim's losses *as determined by the court . . . .*" (emphasis added)); **Laraneta**, 700 F.3d at 991; **Burgess**, 684 F.3d at 460; **United States v. McGarity**, 669 F.3d 1218, 1270 (11th Cir. 2012).

Vicky claims the restitution award should be $952,759.81 — her (net) documented losses to date. Fast did not possess any images of her until June 25, 2010. But she suffered losses before then. *See, e.g.*, **McDaniel**, 631 F.3d at 1206. As the district court found, Fast could not have caused – and thus could not be liable for – losses before that date. *See* **Gamble**, — F.3d at —— , 2013 WL 692512, at *11 ("As a logical matter, a defendant generally cannot cause harm prior to the date of his offense."); **Kearney**, 672 F.3d at 97 ("Vicky's [harms] . . . were reasonably foreseeable *at the time of [the defendant's] conduct.*" (emphasis added)).

Vicky cites *Hayes*, where the defendant was liable for the victim's costs in obtaining civil protection orders even though the offense – violating the protection orders by crossing state lines – occurred *after* the victim incurred the costs. **Hayes**, 135 F.3d at 137-38. Although the triggering offense occurred after the victim incurred the costs, they were "a result of conduct by [the defendant] extending back to the time [the victim] obtained the . . . protection orders." *Id.* at 138. Here, Vicky did not incur losses as a result of Fast's conduct before his offense began.

Moreover, all $952,759.81 of Vicky's losses are not clearly and indisputably traceable to Fast's crime.[6] *See* **Monzel**, 641 F.3d at 538 ("[W]e [cannot] say that [the

[6]Vicky argues that the district court should have held Fast jointly and severally liable for the full amount of her losses. Then, she asserts, he could seek contribution from other defendants liable to her. Section 3664 states, "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion

victim] is clearly and indisputably entitled to the full $3,263,758 from [the defendant] on the ground that her injuries are 'indivisible.'"); *see also* **Burgess**, 684 F.3d at 460 ("The primary difficulty that will face the district court . . . will be the determination . . . of the quantum of loss attributable to [the defendant] for his participation in Vicky's exploitation."). "The government has not shown that [Fast] caused the *entirety* of [Vicky's] losses." **Monzel**, 641 F.3d at 538 (emphasis in original); *see* **18 U.S.C. § 3664(e)**. The court did not clearly and indisputably err in not awarding Vicky $952,759.81 restitution.

The district court ordered Fast to pay $3,333 restitution. The court explained that this award consists of "$2,500 for medical and psychiatric care, occupational therapy, and lost income under 18 U.S.C. § 2259(b)(3)(A), (B), & (D)," and $833 for "attorney fees and costs under 18 U.S.C. § 2259(b)(3)(E)." It reasoned that $3,333 represents the total amount of loss Fast proximately caused Vicky. The court fulfilled its duty to award Vicky the "full amount of [her] losses." *See id.* **§ 2259(a)**, **(b)(1)** ("[T]he court shall order restitution . . . [and] the defendant [shall] pay . . . the full amount of the victim's losses as determined by the court."); *id.* **§ 2259(c)** ("'[V]ictim' means the individual harmed as a result of a commission of a crime under this chapter."); *see also* **Kerr**, 426 U.S. at 402 ("[T]he writ [of mandamus] has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority

---

liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." **18 U.S.C. § 3664(h)**. Because "there is only one defendant in this case," section 3664(h) does not apply. *E.g.*, **Laraneta**, 700 F.3d at 992-93; **Aumais**, 656 F.3d at 156 ("Section 3664(h) implies that joint and several liability may be imposed only when a single district judge is dealing with multiple defendants in a single case . . . ."); *see* **Gamble**, — F.3d at —, 2013 WL 692512, at *6 (rejecting joint-and-several liability and contribution partly because "in this context a contribution system would be 'extraordinarily clumsy'" (quoting **Laraneta**, 700 F.3d at 993)).

when it is its duty to do so." (citation and internal quotation marks omitted)).  The court did not clearly and indisputably err in ordering Fast to pay $3,333 restitution.

* * * * * * *

The motions to dismiss Vicky's direct appeal are granted.  The petition for mandamus is denied.

SHEPHERD, Circuit Judge, concurring in part and dissenting in part.

I concur with respect to sections I, II, and III of the majority's opinion.  I dissent with respect to sections IV and V, and with respect to the judgment, because I would follow the Fifth Circuit's approach and hold that only damages awarded under 18 U.S.C. § 2259(b)(3)(F) are subject to a proximate cause requirement.  See In re Amy Unknown, 701 F.3d 749, 752 (5th Cir. 2012) (en banc).  Consequently, I would grant Vicky's petition for mandamus relief and remand for the district court to recalculate her losses.

I.

As the majority correctly explains, Vicky is entitled to mandamus relief if she can show three things: (1) she has "no adequate alternative means to obtain relief," (2) "the district court clearly and indisputably erred in the restitution amount it awarded her," and (3) "the writ is appropriate."  Supra at 11 (citing Cheney v. U.S. Dist. Court for the Dist. of Columbia, 542 U.S. 367, 380-81(2004)).  I agree with the majority that the first element is satisfied here because mandamus is the only potential relief available to Vicky.  See supra at 11.  However, the majority goes on to conclude that Vicky is not entitled to a writ of mandamus because her "losses are not clearly and indisputably traceable to Fast's crime."  Supra at 16.  This is based on the majority's conclusion that all losses under section 2259 are subject to a proximate

-18-

cause requirement.  See supra at 15-17.  Because I disagree with this interpretation of the statute, I respectfully dissent.

A.

Section 2259 requires courts to order "the defendant to pay the victim . . . the full amount of the victim's losses . . . ."  18 U.S.C. § 2259(b)(1).  The statute defines "victim" as "the individual harmed as a result of a commission of a crime under this chapter . . . ."  18 U.S.C. § 2259(c).  The statute also provides:

> For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for—
>     (A) medical services relating to physical, psychiatric, or psychological care;
>     (B) physical and occupational therapy or rehabilitation;
>     (C) necessary transportation, temporary housing, and child care expenses;
>     (D) lost income;
>     (E) attorneys' fees, as well as other costs incurred; and
>     (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3).

In In re Amy Unknown, the Fifth Circuit concluded that the plain language of section 2259 imposes a proximate cause requirement only on losses awarded under subsection (b)(3)(F).  701 F.3d at 762.  The court reasoned that the rule of the last antecedent, a well-established rule of statutory construction, "instructs that 'a limiting clause or phrase,' such as the 'proximate result' phrase in § 2259(b)(3)(F), 'should ordinarily be read as modifying only the noun or phrase that it immediately follows.'"  Id. (quoting Barnhart v. Thomas, 540 U.S. 20, 26 (2003)).  Significantly, the Supreme Court applied the rule of the last antecedent in two recent cases.  Id. at 764 (analyzing

-19-

Barnhart, 540 U.S. 20 and Jama v. Immigration & Customs Enforcement, 543 U.S. 335 (2005)).  Because "[t]he structure and language of § 2259(b)(3) limit the phrase 'suffered by the victim as a proximate result of the offense' in § 2259(b)(3)(F) to the miscellaneous 'other losses' contained in that subsection," and because there is "no 'other indicia of meaning' in the statute to suggest that the rule of the last antecedent does not apply here," the court found that losses in subsections (A)-(E) are not subject to a proximate cause requirement.  Id. at 762.

Thus, under the Fifth Circuit's approach, as long as losses in subsections (A)-(E) are incurred "as a result of a commission of a crime under this chapter," § 2259(c), a district court must award victims "the full amount" of their losses under section 2259(b)(1), regardless of whether the defendant proximately caused those losses.  See In re Amy Unknown, 701 F.3d at 762.  Only miscellaneous "other losses" are subject to a proximate cause requirement.  Id.

This, of course, does not mean that the statute imposes no causal requirement at all.  As explained above, section 2259 defines "victim" as "the individual harmed as a result of a commission of a crime under this chapter," § 2259(c), and then requires courts to order restitution for "the full amount of the victim's losses," § 2259(b)(1).  Thus, before a court can order restitution, it must determine that (1) the defendant committed a qualifying offense and (2) the person seeking restitution suffered harm as a result of that offense.  See § 2259.  To the extent that the harm resulting from the offense involves medical services, therapy or rehabilitation, transportation, temporary housing, child care, lost income, or attorneys' fees and costs under subsections (A)-(E), a defendant must pay restitution for the full amount of those harms, regardless of whether the defendant proximately caused them. Congress likely chose not to impose a proximate cause requirement for these types of losses because proving proximate causation would be virtually impossible in many situations, thus leaving child victims without redress.

The concept of causation in cases under section 2259 admittedly is complicated. A defendant's action is a "cause" of a victim's injury if that action somehow contributed to the injury. See Black's Law Dictionary 250 (9th ed. 2009) (defining "cause"). This general definition of cause is expansive. For example, a victim whose images have been made widely available through posting on the internet may incur significant counseling expenses to address psychological problems stemming from the knowledge that numerous[7] unknown people are viewing the images. Each individual defendant who views those images is a "cause" of that harm because, if no one viewed the images, the victim arguably would not have suffered that particular form of psychological harm. See In re Amy Unknown, 701 F.3d at 773 ("By possessing, receiving, and distributing child pornography, defendants collectively create the demand that fuels the creation of the abusive images. Thus, where a defendant is convicted of possessing, receiving, or distributing child pornography, a person is a victim under this definition if the images . . . include those of that individual.").

In contrast, "proximate cause" involves more of a policy judgment about whether a particular defendant's action bears a sufficient causal relationship to an injury such that the law should hold the defendant liable for the injury. See Black's Law Dictionary 250 (9th ed. 2009) (defining "proximate cause" and noting that "[s]ome boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy" (internal quotation marks omitted)). On one end of the spectrum is the example above, where the victim's psychological problems are "caused" by innumerable unknown defendants. In this situation, the causal link between a specific defendant's conduct and the victim's losses is more tenuous because it would be virtually impossible to show that the victim's

---

[7]According to the Sixth Circuit, approximately 300 defendants already have been convicted of possessing Vicky's images. United States v. Gamble, Nos. 11-5394/5544, slip op. at 19 (6th Cir. Feb. 27, 2013).

-21-

psychological trauma and attendant counseling expenses would have been any less had that individual defendant not viewed the images. In other words, it is unclear whether the victim could prove that an individual defendant "proximately caused" his or her losses. Compare United States v. Aumais, 656 F.3d 147, 154 (2d Cir. 2011) (finding no proximate cause when evidence showed defendant was one of many who viewed victim's images, but victim "'had no direct contact with [the defendant] nor even knew of his existence'") and United States v. Kennedy, 643 F.3d 1251, 1264 (9th Cir. 2011) (holding that while evidence which "showed only that [the defendant] participated in the audience of persons who viewed the images . . . may be sufficient to establish that [the defendant's] actions were one cause of the generalized harm" to the victims, "it is not sufficient to show that [the defendant was] a proximate cause of any particular losses"), with United States v. Kearney, 672 F.3d 81, 99 (1st Cir. 2012) ("We reject the theory that the victim of child pornography could only show [proximate] causation if she focused on a specific defendant's viewing and redistribution of her images and then attributed specific losses to that defendant's actions.") and United States v. Burgess, 684 F.3d 445, 459-60 (4th Cir. 2012) (adopting First Circuit's interpretation of proximate cause).

On the other end of the spectrum are losses such as attorney's fees incurred in pursuing a restitution action against that defendant. Those losses bear a much closer causal relationship to the individual defendant's conduct, and thus it would be much more likely that a victim could prove the defendant "proximately caused" those losses. See Gamble, Nos. 11-5394/5544, slip op. at 18 (describing "litigation costs in connection with the particular defendant" as "proximately caused harms [that] are clearly traceable to a particular defendant"). Because I would hold that only miscellaneous other losses in subsection (F) are subject to a proximate cause requirement, and because the district court never addressed whether any of Vicky's claimed losses fall under subsection (F), it would be premature for me to attempt to define the precise contours of "proximate cause" at this juncture.

Addressing causation, however, is only the first step that a court must take when crafting a restitution award. Concluding that a defendant caused a victim loss, either as a general "cause" with respect to losses in subsections (A)-(E) or as a "proximate cause" with respect to miscellaneous other losses in subsection (F), merely establishes that a court must enter a restitution order. The next step is for the court to determine the amount of the restitution order.

Section 2259(b)(1) clearly states that the restitution order must be for "the full amount of the victim's losses." Read in tandem with subsection 2259(c), which defines "victim" as "the individual harmed as a result of a commission of a crime under this chapter," the statute's reference to "the full amount of the victim's losses" is best understood as all losses the victim suffered as a result of the defendant's crime under Title 18, Part I, Chapter 110: Sexual Exploitation and Other Abuse of Children. Applying normal common-law principles, where the losses stem from an indivisible injury, the defendant must be held jointly and severally liable for that injury. See Burgess, 684 F.3d at 461 (Gregory, J., concurring in part and dissenting in part). For example, if the hypothetical victim above has incurred a total of $500,000 in counseling expenses as a result of knowing that numerous unknown people are viewing his or her pornographic images, and the court makes a factual finding that his or her psychological trauma is an indivisible injury, then the district court must enter a restitution order for $500,000, even though the individual defendant is not the only person responsible for those losses. See id. If the court determines that some or all of the victim's injuries are divisible, then the court must apportion liability for those losses and enter a restitution order reflecting only the portion of those losses for which the defendant is individually responsible. See id. An example of divisible losses might be attorney's fees incurred in pursing a restitution action against a specific defendant. See Gamble, Nos. 11-5394/5544, slip op. at 18.

In cases where a restitution order reflects joint and several liability, traditional joint and several liability principles would allow a defendant to bring contribution

-23-

actions against other individuals who contributed to the victim's losses. See In re Amy Unknown, 701 F.3d at 769-70 (citing 18 U.S.C. § 3664(h)).[8] These same principles would prevent victims from recouping more than "the full amount" of their losses since a defendant ordered to pay restitution could introduce evidence that the victim had already collected some or all of that restitution from a defendant in a different case. See id. In some instances, defendants even may be able to obtain this evidence from the government, as it appears the government keeps track of at least some restitution awards. See Gamble, Nos. 11-5394/5544, slip op. at 16 ("The Government . . . has already assembled a database to keep abreast of restitution awards to Vicky all over the country.").

But regardless of how defendants can obtain information about other restitution awards, the fact that Congress drafted the statute to require defendants to reimburse victims for "the full amount" of their losses reflects the policy judgment that child victims should be fully compensated for their losses in the most efficient manner possible; defendants, rather than child victims, should bear the responsibility of filing additional lawsuits against other responsible parties in order to apportion responsibility among them. Cf. In re Amy Unknown, 701 F.3d at 760 (noting that section 2259 "reflects a broad restitutionary purpose"). Both Congress and the courts are familiar with this approach of shifting responsibility for apportionment to defendants, as this is essentially the same approach used in CERCLA litigation. See, e.g., Burlington N. and Santa Fe Ry. Co. v. United States, 556 U.S. 599, 614-15

[8]The majority concludes that section 3664(h) permits courts to impose joint and several liability only when there are multiple defendants in a single case. See supra at 16 n.6. Section 3664(h) provides, "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." I agree with the Fifth Circuit that "nothing in § 3664 forbids" imposition of joint and several liability on defendants in separate cases. See In re Amy Unknown, 701 F.3d at 770.

(2009). This interpretation not only reflects the plain language of the statute, but also embraces the sensible policy choice that the responsibility for potentially burdensome litigation should fall on people who commit crimes against children, rather than on those children.

Here, the district court calculated its restitution award based on two erroneous premises: (1) that restitution can be awarded only for losses that the defendant proximately caused and (2) that restitution awards cannot reflect joint and several liability. United States v. Fast, 876 F. Supp. 2d 1087, 1088-89 (D. Neb. 2012). Thus, Vicky has satisfied the second element of mandamus: that "the district court clearly and indisputably erred in the restitution amount it awarded her . . . ." See supra at 11.

B.

The third and final element that Vicky must show to entitle her to mandamus relief is that "the writ is appropriate." See supra at 11. A writ of mandamus "is an extraordinary remedy that is available only to correct a clear abuse of discretion." In re Apple, Inc., 602 F.3d 909, 911 (8th Cir. 2010) (internal quotation marks omitted). "[A] clear error of law or clear error of judgment leading to a patently erroneous result may constitute a clear abuse of discretion." Id. Here, Vicky submitted evidence that she incurred more than $1.2 million in losses as a result of her sexual abuse and the subsequent distribution of her images. The district court, however, awarded only $3,333 in restitution due to its erroneous conclusions that (1) restitution can be awarded only for losses that the defendant proximately caused and (2) restitution awards cannot reflect joint and several liability. Fast, 876 F. Supp. 2d at 1088. Because the entire premise of the district court's restitution calculation was erroneous, Vicky has shown "that the writ is appropriate under the circumstances." See Cheney, 542 U.S. at 381 (noting that this element is left to appellate court's discretion); United States v. Frazier, 651 F.3d 899, 910 (8th Cir. 2011) (remanding

for recalculation of restitution amount when original amount was based on erroneous loss valuation method).

## II.

Because Vicky has satisfied all three mandamus elements, I would grant her petition for mandamus. Consequently, I would remand for the district court to recalculate Vicky's losses under section 2259(b)(3) and to enter a restitution order reflecting "the full amount" of her losses as required by section 2259(b)(1).

_____