# United States Court of Appeals
## For the First Circuit

No. 08-1276

UNITED STATES OF AMERICA,
Appellee,

v.

ALVIN F. AGUIRRE-GONZÁLEZ,
Defendant, Appellee,

_____

RICHARD J. SCHMEELK; WILLIAM B. FINNERAN;
and JIRA ASSOCIATES, LP,
Movants, Appellants,

_____

WELLS CAPITAL MANAGEMENT, INC.,
Provisional Intervenor.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. Senior District Judge]

_____

Before

Torruella, Circuit Judge,
Baldock,[*] Senior Circuit Judge,
and Howard, Circuit Judge.

_____

Ina M. Berlingeri-Vicenty, with whom Greenberg Traurig, P.A.,
was on brief for appellants Schmeelk, Finneran, and Jira
Associates.
Michael A. Rotker, Attorney, U.S. Department of Justice,
Criminal Division, Appellate Section, with whom Rosa E. Rodríguez-
Vélez, United States Attorney, District of Puerto Rico, were on
brief for appellee.
Daniel J. Vaccaro, with whom Aaron H. Kastens, and Michael
Best & Friedrich LLP, were on brief for the provisional intervenor.

_____

[*] Of the Tenth Circuit, sitting by designation.

March 2, 2010

**TORRUELLA, Circuit Judge.** Richard J. Schmeelk, William B. Finneran, and JIRA Associates, LP were victims of a fraudulent investment scheme run by Defendant Alvin F. Aguirre-González ("Aguirre").[1] They brought this appeal after the district court denied their motion for an order of restitution at Aguirre's sentencing.

The government concedes that, under the applicable federal restitution statutes, the district court "indisputably erred" when it concluded that the appellants were not "victims" of Aguirre's fraud entitled to restitution.[2] Nonetheless, the government asserts that appellants cannot challenge the district court's restitution order because they were not parties to the criminal proceedings below. Rather, the government contends, the exclusive remedy for crime victims seeking to challenge a district court's order of restitution in criminal proceedings is to petition for a writ of mandamus under the Crime Victims' Rights Act (CVRA),

---

[1] For simplicity's sake, we refer to Schmeelk, Finneran, and JIRA Associates, LP as "appellants" notwithstanding our conclusion that this challenge should have been brought as a mandamus petition.

[2] As we will explain, these statutes are (1) the Victim Witness Protection Act, 18 U.S.C. § 3663, which provides crime victims with a limited right to restitution at sentencing; (2) the Mandatory Victim Restitution Act, 18 U.S.C. §§ 3663A, 3664, which provides victims of certain economic crimes with a right to a mandatory restitution, and sets forth certain procedural mechanisms to enforce such restitution orders; and (3) the Crime Victims' Rights Act, 18 U.S.C. 3771, which makes available to crime victims, among other things, procedural mechanisms to assert substantive rights in a defendant's criminal proceedings and on appeal, including rights as provided in the VWPA and MVRA.

18 U.S.C. 3771(d)(3), which provides victims with a right to expedited, 72-hour appellate review. The government further contends that, by failing to bring a timely mandamus petition, appellants are no longer capable of seeking relief under the CVRA.

We asked the parties to brief a series of questions pertaining to the right of crime victims to seek appellate review of restitution orders imposed as part of a defendant's criminal sentence. After careful consideration, we hold as follows. First, a petition for a writ of mandamus under the CVRA is the exclusive mechanism for appellate review of sentencing orders affecting crime victims' rights. Next, the 72-hour time limit for mandamus review imposed by the CVRA is precatory, not mandatory, such that appellate courts retain authority, in appropriate circumstances, to consider petitions after the expiration of that deadline. Nonetheless, in this case, we do not exercise our discretion to convert appellant's direct appeal into a mandamus petition, as consideration of the petition on the merits at this late date would be fruitless in light of the CVRA's express concern for finality in criminal sentencing orders. Accordingly, we have no need to address what standard of review applies to timely mandamus petitions under the CVRA.

## I.  Background

### A.  The Criminal Proceedings[3]

From approximately 1994 through 2003, Aguirre was president and chief executive officer of two businesses incorporated under the laws of Puerto Rico which purchased vehicles and equipment and then leased them to various public and private entities.  Acting through his corporations, Aguirre would sell or assign rights to periodic payments under the leases to various third-party investors.  By August 1997, Aguirre began to sell or assign rights to fraudulent leases and pocket investors' money.  He forged signatures, created false invoices, and made various misrepresentations to investors and potential investors in the course of this scheme.

In 2001 and 2002, appellants were among the investors Aguirre deceived.  Together, they purchased rights to payments under several lease agreements, including, as is relevant here, leases with the Municipality of Bayamón and with the Puerto Rico Office of Courts Administration (OAT).  Both leases were, in various aspects, fraudulent, and appellants now claim losses of more than $2.7 million as a result.[4]

---

[3]  The facts relating to Aguirre's fraudulent investment scheme are drawn from the uncontested portions of his presentence report (PSR).  United States v. Brewster, 127 F.3d 22, 24 (1st Cir. 1997).

[4]  In July 2003, appellants and others filed a civil action against Aguirre in federal district court in Puerto Rico seeking to recoup their losses stemming from the fraud.  Aguirre failed to answer,

On November 9, 2005 Aguirre was charged in a 31-count indictment with wire fraud, mail fraud, and criminal forfeiture. All of the counts were alleged to be part and parcel of the "scheme and artifice to defraud" third-party investors we have just described. The indictment alleged total losses for all victims of approximately $30 million. Counts 28 and 29 pertained to leases purchased by appellants, and specifically named Finneran and Jira Associates.

Aguirre's Rule 11 hearing was held on January 23, 2007. Under the terms of a written plea and forfeiture agreement with the government, Aguirre agreed, among other things, to plead guilty to counts 1 through 18 (wire fraud) and count 31 (civil forfeiture); to forfeit $1,500,000 to the government; and to pay $3,321,382 in restitution. In exchange, the government agreed to recommend the dismissal of the remaining counts at sentencing, including counts 28 and 29. The district court accepted Aguirre's guilty plea.

Thereafter, appellants submitted victim impact statements; moved for restitution under the Victim Witness Protection Act (VWPA) and the Mandatory Victims Restitution Act (MVRA); submitted declarations in support of their claims; and argued the merits at Aguirre's sentencing hearing held on

and the district court subsequently entered a partial default judgment, on which appellants have been unable to collect. Previously, in 2002, appellants were able to recover roughly a third of their total losses resulting from the OAT lease in unrelated proceedings.

January 17, 2003. The district court denied the motion for restitution, reasoning that appellants were "victims" of the counts as to which Aguirre had not pled guilty and, therefore, had no criminal liability. The court ultimately awarded approximately $4.8 million to other defrauded investors[5] and $1.5 million to the government on the civil forfeiture count. Aguirre was sentenced to 57 months in prison, the upper end of the Guidelines' recommended range. At the end of the hearing, the court dismissed counts 19 through 30 of the indictment. Final judgment was entered on January 25, 2008 and, four days later, appellants filed a notice of appeal as to the denial of their motion for restitution.[6]

The government now concedes that, under the definition of "victim" used in the VWPA and MVRA, appellants were entitled to restitution notwithstanding the dismissal of counts 28 and 29. Further, they acknowledge that, under the MVRA, the district court had no discretion to deny appellants restitution. See 18 U.S.C. 366A (district court "shall order" defendants convicted of certain offenses, including fraud resulting in pecuniary loss, to pay restitution to identifiable "victims"). Nonetheless, as we

---

[5] We allowed one such victim, Wells Capital Management, Inc., successor in interest to Strong Capital Management, to participate in these proceedings as a provisional intervenor only.

[6] On May 8, 2008, we ordered appellants to show cause as to why their appeal should not be dismissed for want of jurisdiction. On September 5, 2008, we directed the parties to address certain issues we now consider in this appeal.

discuss, the government contends that appellants may no longer claim their right to restitution due to procedural defects in their challenge.

## B. Crime Victims and the Federal Restitution Statutes

Before turning to the issues specific to this appeal, we provide a brief sketch of the network of federal statutes affecting crime victims' rights to restitution.

### 1. The Victim Witness Protection Act

The VWPA authorizes a district court in criminal sentencing proceedings to "order 'in addition to or . . . in lieu of any other penalty authorized by law, that the defendant make restitution to any victim' of the offense." United States v. Acosta, 303 F.3d 78, 86 (1st Cir. 2002)(quoting 18 U.S.C. § 3663 (a)). The purpose of the statute is to "insure that the wrongdoer make good[], to the degree possible, the harm he has caused his victim." United States v. Vaknin, 112 F.3d 579, 582 (1st Cir. 1997)(quoting S. Rep. No. 97-532, at 31 (1982), reprinted in 1982 U.S.C.C.A.N. 2515, 2536). When the VWPA was enacted in 1982, it represented a "tectonic" shift in the criminal restitution regime, transforming "criminal restitution from a sporadically imposed condition of probation into the sentencing norm in cases involving quantifiable economic loss." Id. (explaining that "federal judges were not able to impose criminal restitution as a condition of

probation until 1925 when Congress passed the Federal Probation Act" and, even after that, "used the power sparingly").

In its earlier forms, the VWPA did not define who was a "victim" eligible for restitution. In 1990 the Supreme Court filled that gap, construing the statute "to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction," and not counts which were dismissed. Hughey v. United States, 495 U.S. 411, 413, 421 (1990)(recognizing that "[t]he essence of a plea agreement is that both the prosecution and the defense make concessions to avoid potential losses"). Congress responded in short order, amending the VWPA to provide that "[f]or purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or pattern of criminal activity means any person directly harmed by the defendant's conduct in the course of the scheme, conspiracy or pattern." Crime Control Act of 1990, Pub. L. No. 101-647, 104 Stat. 4789 (codified at 18 U.S.C. § 3663(a)(2)). In such cases, like this one, the district court may now "order restitution without regard to whether the conduct that harmed the victim was conduct underlying the offense of conviction." Acosta, 303 F.3d at 86-87.

In 1996 Congress amended the VWPA again, retaining the specific definition of "victim" for crimes involving a "scheme, conspiracy, or pattern of activity" and adding more generally that

"the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered."  Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996)(codified at 18 U.S.C. § 3663(a)(2)).

### 2.  The Mandatory Victim Restitution Act

Also in 1996, Congress enacted the MVRA, which "compels a sentencing court to order a defendant convicted of certain crimes, including crimes against property, to make restitution to his victim." United States v. Innarelli, 524 F.3d 286, 292-93 (1st Cir. 2008)(emphasis added); see 18 U.S.C. § 3663A.  To that end, the statute directs district courts to "order restitution to each victim in the full amount of each victim's losses . . . without consideration of the economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1)(A).  The definition of "victim" under the MVRA is substantively identical to that set forth in the VWPA, as amended.  Id. 3663A(a)(2); see, e.g., United States v. Chalupnik, 514 F.3d 748, 753 (8th Cir. 2008) (MVRA and VWPA "contain identical definitions of the term 'victim'").  The MVRA's "changes reflect a [] fundamental shift in the purpose of restitution" away from its strictly penal origins; "[t]he new restitution scheme is not merely a means of punishment and rehabilitation, but an 'attempt to provide those who suffer the consequences of crime with some means of recouping the personal and financial losses.'" United States v.

-10-

Perry, 360 F.3d 519, 530 (6th Cir. 2004)(quoting H.R. Rep. No. 104-16, at 5 (1995)).

### 3. The Crime Victims Rights Act

This shift towards a more compensatory regime found further expression in the CVRA, enacted in 2004. See 18 U.S.C. § 3771. The CVRA enshrines a panoply of crime victims' "rights," including rights "to be reasonably heard at any public proceeding in the district court involving release, plea, [or] sentencing" and "to full and timely restitution as provided in law." Id. §§ 3771 (a)(4), (a)(6). The CVRA obligates district courts in criminal proceedings to "ensure that the crime victim is afforded [such] rights" and requires government prosecutors to "make their best efforts to see that crime victims are notified of, and accorded, the[ir] rights." Id. §§ 3771(b)(1), (c)(1). It further provides that the "crime victim or the crime victim's lawful representative, and the attorney for the Government may assert the [victim's] rights." Id. § 3771(d)(1).

Critically for purposes of this appeal, the CVRA states, under the heading "Enforcement and limitations":

> The [victim's] rights . . . shall be asserted in the district court in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the district court in the district in which the crime occurred. The district court shall take up and decide any motion asserting a victim's right forthwith. If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus. The

court of appeals may issue the writ on the order of a single judge pursuant to circuit rule or the Federal Rules of Appellate Procedure. <u>The court of appeals shall take up and decide such application forthwith within 72 hours after the petition has been filed</u>. In no event shall proceedings be stayed or subject to a continuance of more than five days for purposes of enforcing this chapter [this section]. If the court of appeals denies the relief sought, the reasons for the denial shall be clearly stated on the record in a written opinion.

<u>Id.</u> § 3771(d)(3) (emphasis added). In the alternative, the statute provides that "<u>[i]n any appeal</u> in a criminal case, <u>the Government may assert as error</u> the district court's denial of any crime victim's right in the proceeding to which the appeal relates." <u>Id.</u> § 3771(d)(4)(emphasis added).[7] The CVRA defines "crime victim" for purposes of its provisions as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." <u>Id.</u> § 3771(e).

---

[7] In addition, the CVRA provides an additional "[l]imitation on relief":

In no case shall a failure to afford a right under this chapter [this section] provide grounds for a new trial. A victim may make a motion to re-open a plea or sentence only if--
    (A) the victim has asserted the right to be heard before or during the proceeding at issue and such right was denied;
    (B) the victim petitions the court of appeals for a writ of mandamus within 14 days; and
    (C) in the case of a plea, the accused has not pled to the highest offense charged.
    This paragraph does not affect the victim's right to restitution as provided in title 18, United States Code.
18 U.S.C. § 3771(d)(5).

-12-

Notwithstanding the general shift in the restitution statutes towards a more compensatory regime, the law in this circuit remains that "restitution ordered as part of a criminal sentence is a criminal penalty, not a civil remedy." United States v. Ziskind, 471 F.3d 266, 270 (1st Cir. 2006). But see United States v. Serawop, 505 F.3d 1112, 1122 & n.4 (10th Cir. 2007) (stating that "the MVRA does not inflict criminal punishment, and thus is not punitive," but acknowledging that many courts hold otherwise).

## II. Discussion

"We review de novo questions of law regarding the application of restitution statutes." United States v. Berger, 574 F.3d 1202, 1204 (9th Cir. 2009); see GMC v. Darling's, 444 F.3d 98, 107 (1st Cir. 2006).

### A. Appellate Review of Restitution Orders

Appellants first contend that a petition for mandamus is not the exclusive remedy for crime victims seeking to challenge a district court's restitution order. Rather, they contend that the CVRA offers a procedural choice: petition the court of appeals for a writ of mandamus on an expedited basis, or file an appeal in the normal course under the general appellate jurisdictional statute, which grants us jurisdiction over all "final decisions" of the federal district courts. 28 U.S.C. § 1291.

At the outset, we clarify that the issue before us is not whether we lack jurisdiction under § 1291, which "constrains what may be appealed, not who may bring such appeals"; "the issues of jurisdiction under § 1291 and non-party appellate rights are distinct." United States v. Hunter, No. 08-4010, 2008 U.S. App. LEXIS 24319, at *7, 9 (10th Cir. Dec. 2, 2008)(emphasis added). Instead, our inquiry turns on whether appellants, as crime victims denied their right to restitution under the federal statutes, may appeal the restitution component of a defendant's criminal sentence. See id. at *9.

"The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." Marino v. Ortiz, 484 U.S. 301, 304 (1988) (per curiam, civil judgment); Karcher v. May, 484 U.S. 72, 77 (1987) ("[O]ne who is not a party or has not been treated as a party to a judgment has no right to appeal therefrom."). Exceptions to this general rule exist, typically in the context of civil disputes, but they "are few and far between." Microsystems Software, Inc. v. Scandinavia Online AB, 226 F.3d 35, 40 (1st Cir. 2000) (limited exception for nonparty challenge of denial of motion to intervene); see Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund, 582 F.3d 30, 41 (1st Cir. 2009)(explaining, in context of civil claims, that "the fact that a decision against a defendant may practically impact a third party is not ordinarily enough for

appellant status absent intervention or joinder in the trial court").

Notwithstanding the rights reflected in the restitution statutes, crime victims are not parties to a criminal sentencing proceeding. See, e.g., United States v. Palma, 760 F.2d 475, 479 (3d Cir. 1985) (under VWPA, "the victim . . . is not made a party to the sentencing proceeding"); United States v. Brown, 744 F.2d 905, 909-10 (2d Cir. 1984); see also Ziskind, 471 F.3d at 270. Thus, the baseline rule is that crime victims, as non-parties, may not appeal a defendant's criminal sentence. See Hunter, 2008 U.S. App. LEXIS 24319, at *7; United States v. Grundhoefer, 916 F.2d 788, 793 (2d Cir. 1990) ("The victim as a non-party is accorded only a limited presence at a sentencing proceeding and has no right to appeal an inadequate remedy."); United States v. Franklin, 792 F.2d 998, 999-1000 (11th Cir. 1986) (dismissing appeal because "[a]ppellant cites no statute, including the [VWPA], and we find none, that would give us the authority to entertain an appeal by a victim . . . who was not a party to the sentencing proceeding in the district court"); see also 18 U.S.C. § 3742 (providing that the government and the defendant, under appropriate circumstances, may appeal a criminal sentence).

Appellants maintain that the rule against appellate review by non-parties does not apply to crime victims seeking to challenge restitution orders, essentially because those orders

-15-

affect their substantial rights as reflected in the restitution statutes. But the cases they rely on do not support this premise. First, appellants point to a collection of <u>civil</u> cases in which courts have entertained direct appeals by non-parties. <u>E.g.</u>, <u>Devlin</u> v. <u>Scardelletti</u>, 536 U.S. 1 (2002)(permitting unnamed class member to appeal class action settlement). However, as the Tenth Circuit has aptly explained:

> On the issue of non-party appeals, there is an important distinction between civil and criminal cases. Civil cases often implicate the pecuniary rights of non-parties, such as the unnamed class member in <u>Devlin</u>. . . . Criminal trials, on the other hand, place an individual citizen against the United States government. While non-parties may have an interest in aspects of the case, they do not have a tangible interest in the outcome. This distinction is evidenced by our procedural rules. The Federal Rules of Civil Procedure allow non-parties to intervene to assert their rights. The Federal Rules of Criminal Procedure contain no comparable provision. This distinction recognizes that non-parties often have a unique interest in civil cases. Because non-parties do not have a comparable unique interest in the outcome of criminal trials, we do not consider <u>Devlin</u> or [similar civil cases] persuasive [authority in support of the proposition that crime victims may bring an appeal of a restitution sentence].

<u>Hunter</u>, 2008 U.S. App. LEXIS 24319, at *10-11.

Second, appellants cite a handful of cases in which courts of appeals have permitted non-parties to challenge collateral orders issued in the course of criminal sentencing proceedings, but not the sentence itself. For example, in <u>United</u>

-16-

States v. Berger, the Ninth Circuit asserted without discussion that it had proper jurisdiction under § 1291 over an appeal brought by a defendant's wife, not a crime victim, who challenged a district court's order regarding the distribution of proceeds from an illegal sale of her husband's assets "to the victims of [his] fraud who were entitled to receive restitution." 574 F.3d 1202, 1204 (9th Cir. 2009). In In re Siler, the Sixth Circuit entertained a direct appeal brought by crime victims seeking to inspect a defendant's PSR pursuant to their rights under the CVRA, "although they were not technically parties below" and despite the general rule that non-parties may not bring an appeal, because "the district court effectively treated the [victims] like intervening parties and decided the merits of their motions." 571 F.3d 604, 608 (6th Cir. 2009). Neither case involved a crime victim's direct appeal of a criminal restitution sentence, nor would a result in the third party's favor have required the court to disturb the sentence imposed.

Finally, appellants point to United States v. Cienfuegos, which involved a direct appeal of the restitution component of a defendant's sentence brought by the government on behalf of a crime victim under the MVRA. 462 F.3d 1160, 1161 (9th Cir. 2006). Cienfuegos provides no support for the proposition that crime victims have the right to bring a direct appeal of a criminal sentence.

None of the cases on which appellants rely call into question the default rule that crime victims have no right to directly appeal a defendant's criminal sentence, under the CVRA or otherwise. Rather, the CVRA expressly provides crime victims with a limited avenue to challenge the restitution component of a defendant's sentence through a petition for a writ of mandamus, and states that in the normal course the government may assert victims' rights on their behalf in a direct appeal. 18 U.S.C. § 3771 (d)(3), (d)(5); see TAMA v. Lewis, 444 U.S. 11, 19 (1979)("[W]here a statute expressly provides a particular remedy of remedies, a court must be chary of reading others into it."); Marbury v. Madison, 5 U.S. 137, 175 (1803)("[T]he appellate jurisdiction may be exercised in a variety of forms, and [] if it be the will of the legislature that a mandamus should be used for that purpose, that will must be obeyed.").

Accordingly, we join the Tenth Circuit to hold that "individuals claiming to be victims under the CVRA may not appeal from the alleged denial of their rights under that statute except through a petition for a writ of mandamus." Hunter, 2008 U.S. App. LEXIS 24319, at *3; see also In re Antrobus, 519 F.3d 1123, 1129 (10th Cir. 2008)("While the CVRA provides individuals seeking review of a district court's 'victim status' decision with mandamus review, it simultaneously affords the government with the ability to obtain ordinary appellate review of the same decision."). The

-18-

government alone may bring a direct appeal of a defendant's sentence on behalf of a victim denied his rights under the CVRA. See 18 U.S.C. § 3771(d)(5); see also 18 U.S.C. § 3742.

### B. Availability of Mandamus Review

The CVRA provides that the court of appeals "shall take up and decide" mandamus petitions under the statute "forthwith within 72 hours after the petition has been filed."  18 U.S.C. § 3771(d)(3).  The parties do not dispute that we have authority to review mandamus petitions under the CVRA outside of the 72 hour window set forth in the statute.  Cf. Kenna v. United States Dist. Ct. for the Centr. Dist. of Cal., 435 F.3d 1011, 1018 (9th Cir. 2006)(ruling on CVRA mandamus petition outside of statutory timeframe).  The CVRA imposes no consequence for failure to comply with the time limitation, and in such circumstances we construe such limitations as precatory, rather than mandatory.  See Rodríguez v. Superintendent, Bay State Correctional Ctr., 139 F.3d 270, 272-73 (1st Cir. 1998) (construing statutory deadline as "precatory not mandatory" where it did not "contain both an express command that the official act within a given temporal period and a consequence attached to noncompliance" (emphasis added)).

The parties also agree that we have the authority to convert appellants' direct appeal into a petition for mandamus relief.  See, e.g., In re: Providence Journal Co., 293 F.3d 1, 9 (1st Cir. 2002) ("Under the All Writs Act, a federal court of

-19-

appeals has the power to treat an attempted appeal from an unappealable (or possibly unappealable) order as a petition for a writ of mandamus." (internal citations, quotation marks, and alteration omitted)); see 28 U.S.C. § 1651. However, at the present juncture, conversion of this appeal into a petition for mandamus relief would serve no purpose, and we decline to exercise our discretion to do so.

The CVRA plainly envisions that crime victims' petitions challenging a denial of their rights will be taken up and decided in short order. It requires expeditious consideration by the district court, quick appellate review, and provides that a victim may not move to disturb a defendant's plea or sentence unless, among other things, "the victim petitions the court of appeals for a writ of mandamus within 14 days" of the denial of the victim's motion in the district court. 18 U.S.C. §§ 3771(d)(3), 3771(d)(5). We are mindful that the federal restitution statutes are intended to protect victims, not defendants. See, e.g., United States v. Rostoff, 164 F.3d 63, 66 (1st Cir. 1999)(applying VWPA). However, the criminal justice system also has a strong interest in the finality of criminal sentences. Olsen v. Correiro, 189 F.3d 52, 69 (1st Cir. 1999) (noting society's "interest in the integrity of the system of compromise resolution of criminal charges"); see Blackledge v. Allison, 431 U.S. 63, 71 (1977) ("[T]he guilty plea and the often concomitant plea bargain are important components of

this country's criminal justice system. . . . [The] advantages can be secured, however, only if dispositions by guilty plea are accorded a great measure of finality."); see also Teague v. Lane, 489 U.S. 288, 309 (1989)("[T]he principle of finality . . . is essential to the operation of our criminal justice system."). These finality concerns animate the CVRA's procedural mechanisms.

The CVRA was in force when appellants elected to pursue a direct appeal rather than petition for the writ as provided by statute, and more than two years have passed since the district court sentenced Aguirre. Under these circumstances, we conclude that appellants would not be entitled to mandamus relief regardless of whether we applied the exacting standard of review governing traditional petitions for the writ, see In re Dean, 527 F.3d 391, 394 (5th Cir. 2008)(applying traditional mandamus standard to petition under CVRA); In re Antrobus, 519 F.3d at 1125 (same), or the more lenient, abuse of discretion standard which some courts have found appropriate when considering crime victims' petitions under the CVRA, see In re W.R. Huff Asset Mgmt. Co., 409 F.3d 555, 562-63 (2d Cir. 2005) (applying abuse of discretion standard); Kenna, 435 F.3d at 1017 (Ninth Circuit, same); see also In re Simons, No. 09-3109, 2009 U.S. App. LEXIS 8694, at *3 (6th Cir. Feb. 5, 2009) (noting the "split of authority among the circuit courts as [to] whether a petition for a writ of mandamus under the CVRA is reviewed under the traditional standard applied to

-21-

petitions under the All Writs Act or a more lenient, appellate-review standard").  Thus, because conversion of this appeal into a mandamus petition would be futile, we decline to exercise our discretion to do so.  We therefore have no need to decide which standard of review governs mandamus petitions under the CVRA.

**<u>Affirmed</u>**.