**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1527**

In re: CARLOS BROWN,

Petitioner.

On Petition for Writ of Mandamus from the United States District Court for the District of Maryland, at Greenbelt.  (8:17-po-07283-TMD-1)

Argued:  March 20, 2019                                     Decided:  July 26, 2019

Before MOTZ, AGEE and WYNN, Circuit Judges.

Petition for writ of mandamus granted by published opinion. Judge Agee wrote the opinion, in which Judge Motz and Judge Wynn joined.

**ARGUED:**   Victor Darrel Stone, MARYLAND CRIME VICTIMS' RESOURCE CENTER, INC., Upper Marlboro, Maryland, for Petitioner.  Jason Daniel Medinger, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland; Cullen Oakes Macbeth, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Respondents.  **ON BRIEF:**  Russell P. Butler, MARYLAND CRIME VICTIMS' RESOURCE CENTER, INC., Upper Marlboro, Maryland, for Petitioner.  Robert K. Hur, United States Attorney, Jane F. Nathan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Respondent United States of America.  James Wyda, Federal Public Defender, Baltimore, Maryland, Paresh S. Patel, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Respondent Joyce Boone.

AGEE, Circuit Judge:

In June 2017, Joyce Boone injured Carlos Brown in a car accident she caused while driving under the influence of alcohol. She pleaded guilty to three traffic violations before the United States magistrate judge and was sentenced to two years' probation. Brown asked the court to order restitution as a condition of Boone's probation, but his request was denied. He now petitions this Court for a writ of mandamus pursuant to 18 U.S.C. § 3771(d)(3). For the reasons stated below, we grant the petition and remand the case.

I.

A.

Brown owned and operated his own electrician's business at the time of the accident. In June 2017, he was riding a motorcycle on a federal roadway in Maryland when Boone ran a red light while operating her vehicle under the influence of alcohol. She collided with Brown, leaving him with serious injuries that required at least seven surgeries within one year of the accident. Brown had metal rods installed in various parts of his body and needed assistive devices to walk. Because of these injuries, Brown alleged that he became unable to work as an electrician or perform daily activities and was "struggling physically, mentally, emotionally, [and] financially." J.A. 39.

2

Boone was later charged with six violations of various federal traffic regulations in the United States District Court for the District of Maryland.[1] She reached a plea agreement with the Government and pleaded guilty to three offenses[2]: (1) driving with a blood alcohol concentration of .08 or above in violation of 36 C.F.R. § 4.23(a)(2); (2) failing to obey a traffic control device in violation of 36 C.F.R. § 4.12; and (3) unsafely operating a motor vehicle in violation of 36 C.F.R. § 4.22(b)(1). Under the terms of the plea agreement, the Government agreed to recommend a sentence of probation but make no recommendation regarding Brown's claim for restitution as part of Boone's sentence. The parties proceeded to a plea hearing,[3] during which the court conducted a plea colloquy and accepted Boone's guilty plea.

At the hearing, Brown requested that the court order restitution in the amount of $18,976 as a condition of Boone's probation. Specifically, Brown sought restitution for the deductible of $250 he paid to his vehicle insurance company and his estimated lost wages for the past seven months, which he calculated at an hourly rate of $22, less the settlement amount of $30,000 he received from his insurer. To support his restitution request, Brown

---

[1] A violation of the federal traffic regulations is punishable for a term of imprisonment not exceeding six months, 36 C.F.R. § 1.3; *see* 18 U.S.C. § 1865(a), and thus is a Class B misdemeanor, 18 U.S.C. § 3559 (a)(7).

[2] Boone's proceedings were before the magistrate judge because she was charged with petty offenses, *see* 18 U.S.C. § 19 (identifying a Class B misdemeanor as a "petty offense"), and magistrate judges have authority "to dispose of cases involving petty offenses . . . committed by both youth offenders and adults," *United States v. Snow*, 748 F.2d 928, 931 (4th Cir. 1984).

[3] The magistrate judge set a bench trial for February 1, 2018. On that day, the Government notified the court that the parties reached a plea agreement, which converted the scheduled trial into a plea hearing.

3

provided personal and familial statements about his injuries and an October 2017 letter from his physician stating that he would not be able to work full-time for one to one-and-a-half years after the accident. Brown explicitly declined to seek restitution for his medical bills or future lost wages.

Boone agreed that the $250 deductible was an appropriate part of a restitution award but objected to Brown's claim for past lost wages because she contended his supporting evidence was speculative and not reliable. She asked the court to order a restitution award of $250, or, in the alternative, schedule a hearing as to any other proper amounts, although she believed the issue of restitution "would all get flushed out in the civil proceedings through discovery where it should be flushed out. Not here [in] a criminal magistrate court." J.A. 52. At that point, the court noted that Brown "got serious injuries [and] has had serious medical injuries in the past. It sounds like more surgery is down the road, lost wages, children. [T]his is not something I can decide today." J.A. 60–61. The court declined to order restitution at that time, stating that Brown's case was "extraordinarily unusual," J.A. 60, but ordered a presentence report directing the probation officer to examine the issue of restitution. The court scheduled a sentencing hearing for April 2018.

Prior to the sentencing hearing, Brown filed an amended request seeking restitution in the amount of $19,040.32 solely to cover his past lost wages. To support the request, he submitted his 2017 federal tax return, his own affidavit detailing his physical struggles, and the letter from his physician. In the letter, the doctor noted that Brown was using a walker and needed physical therapy twice per week for the next six months. The physician further stated "[i]f he is able to resume his regular full-time work as an electrician, it will likely be

4

1[ to ]1-1/2 years from the time of his injury." J.A. 75. There was no evidence offered as to whether Brown could work part-time as an electrician or was capable of maintaining some other form of full- or part-time employment.

At the sentencing hearing, Brown reiterated his request for restitution, stating that he would not pursue any civil action against Boone. She continued to oppose the request, arguing that the court should "stay out of it" because Brown's restitution request "is [better suited for] civil litigation." J.A. 109. Further, Boone challenged the reliability of the October 2017 letter from Brown's doctor and questioned why Brown could not find other employment and thereby mitigate damages. She also argued that the court may not award restitution here because her conduct underlying the offenses to which she pleaded guilty did not cause Brown's injury.[4] Boone asked the court to place her on one year of probation and not to order restitution as a condition of probation.

### B.

The court sentenced Boone to two years' probation but declined to order restitution, largely for two reasons: Brown lacked sufficient evidence to support his restitution request and the sentencing forum was unsuitable for determining the requested restitution. First, even though the court acknowledged that it had discretion to order restitution and "no reason to not believe Mr. Brown," J.A. 126, it rejected Brown's request, stating:

> although there is evidence of lost wages through Mr. Brown's own testimony and tax return, in my opinion there has got to be more than simply the victim's statement to award restitution in the amount of $20,000. . . . . [T]his

---

[4] Boone has abandoned this claim on appeal and does not contest that her conduct underlying the convicted offenses did cause Brown's injury.

5

is misdemeanor court. This court generally does not deal with restitution, and if we are going to deal with restitution, it is not in this amount.

J.A. 127. The court also discussed Brown's future medical bills that were approximately a "half a million dollars," J.A. 128, although Brown did not request restitution for those expenses.

Next, based on the proffered evidence and Boone's opposition, the court determined that under the circumstances of this case it was not the appropriate forum to determine restitution and referenced *United States v. Fountain* in support of its decision. *See* 768 F.2d 790, 801–02 (7th Cir. 1985) (upholding the district court's decision not to award restitution for future lost wages because "the calculation of lost future earnings involves the difficult problem of translating an uncertain future stream of earnings into a present value"). The court then stated, "[i]n a criminal context the Court will put its foot into the waters of restitution if things are readily and accurately ascertainable uncontested. We are contested here, and that is why this is just so not the forum to be dealing with these kinds of figures." J.A. 129. The court also noted that "to order restitution in the amount that is being requested with the evidence that would give me the level of confidence and comfort in that I am being accurate would, in my opinion, complicate and prolong the sentencing process." J.A. 130. The court advised Brown to seek restitution in a civil suit so that he could conduct discovery and deal with "big figures." J.A. 129.

From the denial of his request for restitution, Brown timely petitions for a writ of mandamus as authorized by the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771.[5] Boone opposes the petition, and the Government, in accordance with its obligation under the plea agreement, takes no position either for or against a restitution award. We have jurisdiction under § 3771(d)(3) and grant the petition for the reasons that follow.[6]

## II.

On appeal, Boone makes two arguments: that (1) we lack subject matter jurisdiction to review Brown's petition and (2) even if we have jurisdiction, the petition lacks merit. We examine and reject each argument in turn.

### A.

Section 3771(d)(3) governs our jurisdiction over Brown's petition, as it allows a crime victim to "petition the court of appeals for a writ of mandamus" if "the *district court* denies the [restitution request]." § 3771(d)(3) (emphasis added). Boone asserts that the statute does not authorize our review of Brown's petition because it challenges the decision made by a magistrate judge, not a district court judge. She argues that by using the specific

---

[5] The CVRA "protect[s] victims and guarantee[s] them some involvement in the criminal justice process" by providing them with "notice of any proceedings, the right to attend those proceedings, the right to confer with the prosecutor, and the right to be 'reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or parole proceeding.'" *United States v. Moussaoui*, 483 F.3d 220, 234 (4th Cir. 2007) (quoting 18 U.S.C. § 3771(a)).

[6] We note that despite Boone's concession that restitution for the $250 insurance deductible was appropriate, the court declined to award that amount. Brown makes no claim on appeal that the failure to make that award was erroneous.

term "district court," § 3771(d)(3) "only authorizes a victim to challenge a *district court's* denial of a restitution request—not a *magistrate court's* denial of the same." Response Br. 12. In effect, Boone argues that a magistrate court does not fall within the meaning of "district court" under § 3771(d)(3) because it is separate and different from a district court.

Arguing that Congress' choice of the term "district court" in § 3771(d)(3) precludes our review of magistrate judges' decisions, Boone cites to 18 U.S.C. § 3402 in support. This general appeal statute states, "[i]n all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." § 3402. Boone asserts that only the Government can appeal a magistrate judge's denial of a restitution request to a district judge under § 3402 and, if the district judge denies the appeal, can proceed to a court of appeals under § 3771(d)(3). According to Boone, Congress intentionally distinguished the magistrate judge from the district judge in § 3402 and, had it intended a crime victim to have any rights to directly petition a court of appeals for a writ of mandamus based on a magistrate judge's denial of restitution, Congress would have used the term "magistrate" in § 3771(d)(3). Thus, in Boone's view, where the Government takes no position on a petition for a writ of mandamus and the district court judge has not reviewed the magistrate judge's denial, we lack subject matter jurisdiction to consider the petition. We disagree.

Boone's argument is erroneous for at least three reasons. First, her reading of "district court" in § 3771(d)(3) is inconsistent with the relevant statutory definitions. Under 18 U.S.C. § 3001, the statutes in Part II of Title 18, including § 3771, are governed by the

8

applicable definitional rules of the Federal Rules of Criminal Procedure. Pursuant to Rule 1, "'[c]ourt' means a federal judge performing functions authorized by law." Fed. R. Crim. P. 1(b)(2). "'Federal judge," in turn, is defined to include "a magistrate judge." Fed. R. Crim. P. 1(b)(3)(B). The Advisory Committee intentionally crafted this definition to "reflect[] the current understanding that magistrate judges act as the 'court' in many proceedings" because it found the term "court's" synonymous use with "'district judge'" to be "misleading or unduly narrow" and not to "cover the many functions performed by magistrate judges." Fed. R. Crim. P. 1(b)(2) advisory committee's note to 2002 amendment. This principle must be incorporated into the definition of "district court" in § 3771 because Rule 1 governs the statute's definitions. *See id.* Thus, by definition, a "district court" under § 3771(d)(3) includes a magistrate judge. Boone's argument ignores both the definitional structure for § 3771 imposed through § 3001 and Congress' decision not to alter that structure for purposes of § 3771.

Second, Boone misstates the scope of § 3402, which deals with "an appeal of right" "from the judgment of the magistrate judge to a judge of the district court" in "all cases of conviction by a United States magistrate judge." 18 U.S.C. § 3402. The case before us is not such an appeal. It is a fundamentally different proceeding by the crime victim—not the defendant—and thus does not fall under § 3402 as an appeal from a "case[ ] of conviction by a United States magistrate judge." § 3402; *see In re Murphy-Brown, LLC*, 907 F.3d 788, 793 (4th Cir. 2018) ("[W]rits of mandamus function differently from ordinary appeals. . . .").

9

Under the plain terms of § 3771(d)(3), it is the "movant" who "may petition the court of appeals for a writ of mandamus" "[i]f the district court denies the relief sought." § 3771(d)(3). Brown is the "movant" under § 3771(d)(3) and is clearly accorded the right to petition under the statute. Congress' specific grant of this right to a "movant" is unrelated to any appeal under § 3402 and is plainly *not* a right granted to a defendant or limited to the Government. Congress has made this distinction clear by enacting § 3771(d)(4), which "simultaneously affords the government with the ability to obtain ordinary appellate review of the [restitution] decision." *See In re Antrobus*, 519 F.3d 1123, 1129 (10th Cir. 2008). By expressly providing only the Government, not a "movant," with ordinary direct appeal rights, Congress has distinguished the appellate rights for mandamus review afforded to a "movant" under § 3771(d)(3) from the ordinary appeal rights afforded to a party or the Government under § 3771(d)(4) which would be subject to § 3402. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." (internal quotation marks omitted)).

As a result, Boone's position simply ignores Congress' specific choice of "a mandamus petition [to a court of appeals] as the appropriate vehicle for appellate review of an order denying a crime victim's assertion of a right protected thereunder." *In re Doe*, 264 F. App'x 260, 262 (4th Cir. 2007); *see* Fed. R. Crim. P. 60(b)(5) (stating that a crime victim may move to reopen a plea or sentence if, among other things, "the victim petitions the court of appeals for a writ of mandamus within 10 days after the denial, and the writ is granted"); *United States v. Monzel*, 641 F.3d 528, 540 (D.C. Cir. 2011) ("Since the

10

enactment of the CVRA, every circuit . . . has held that mandamus is a crime victim's only recourse for challenging a restitution order").

Brown, as the victim, has no right to contest the propriety of Boone's conviction. *See United States v. Aguirre-Gonzalez*, 597 F.3d 46, 53 (1st Cir. 2010) ("[C]rime victims are not parties to a criminal sentencing proceeding. . . . . Thus, the baseline rule is that crime victims, as non-parties, may not appeal a defendant's criminal sentence."). Instead, by petitioning this Court for a writ of mandamus, Brown is asserting his separate *statutory* right to restitution which Congress has afforded him under the CVRA. *See id.* at 54 (holding that although "crime victims have no right to directly appeal a defendant's criminal sentence," "the CVRA expressly provides [them] with a limited avenue to challenge the restitution component of a defendant's sentence through a petition for a writ of mandamus"). Brown's § 3771(d)(3) petition thus has no relation to an appeal under § 3402 and the distinctions that statute draws between a magistrate judge and a district judge do not apply here.

Last, Boone's interpretation of § 3771(d)(3) creates a conflict with other statutes governing magistrate judges and ignores Congress' policy choices behind those statutes. Her approach violates canons of statutory interpretation that require courts to "reflect, rather than distort, the policy choices that elected representatives have made" in interpreting statutes, *Almendarez-Torres v. United States*, 523 U.S. 224, 238 (1998), and to avoid "reading conflicts into statutes," *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018). In following these doctrines, we must reject Boone's argument.

11

Our analysis is derived from two statutes under the Federal Magistrates Act, 28 U.S.C. § 636, and 18 U.S.C. § 3401, which create and govern the office of magistrate judge and demonstrate a magistrate judge's role as an arm of the district court. The Federal Magistrates Act invests certain judicial powers in magistrate judges, including the powers "to enter a sentence for a petty offense" and "to conduct trials under section 3401, title 18, United States Code, in conformity with and subject to the limitations of that section" "within the district in which sessions are held by the court that appointed the magistrate judge." 28 U.S.C. § 636(a). In turn, § 3401(b) provides, "[a]ny person charged with a misdemeanor, *other than a petty offense* may elect . . . to be tried before a district judge for the district in which the offense was committed." 18 U.S.C. § 3401(b) (emphasis added). This section indicates that a defendant who is charged with a petty offense, like Boone, may not elect to be tried before a district judge and must proceed before a magistrate judge unless a district judge chooses to preside in the case.

This statutory scheme reflects "Congress' perception that the assistance of federal magistrates was a necessary measure to ensure that the already severe pressures on the federal district courts do not become overwhelming." *United States v. Raddatz*, 447 U.S. 667, 713 (1980) (Marshall, J., dissenting). By enacting the Federal Magistrates Act,

> The Congress . . . manifested its intention to create a judicial officer and to invest in him the power to *furnish assistance* to a judge of the district court. The magistrate *was given jurisdiction* over *petty criminal offenses* and the Act also gave each district court the discretionary power to use the magistrate to assist a district court judge . . .
> . . . .
> [T]he Congress *clearly indicated its intent* that the magistrate should be a judicial officer *whose purpose was to assist the district judge* to the end that the district judge could have more time to preside at the trial of cases having

12

been relieved of part of his duties which required the judge to personally hear each and every pretrial motion or proceeding necessary to prepare a case for trial.

H.R. Rep. No. 94-1609, at 6 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6162, 6166 (emphasis added). Pursuant to this clear congressional intent, magistrate judges "are appointed and subject to removal by Article III judges," *Peretz v. United States*, 501 U.S. 923, 937 (1991), and "district judges retain plenary authority over when, what, and how many pretrial matters are assigned to magistrates," *Raddatz*, 447 U.S. at 685 (Blackmun, J., concurring). Thus, magistrate judges, as "competent and impartial assistants" of district judges, are an integral part of a district court. *Id.* at 686.

Based on this legislative history and the statutory scheme governing magistrate judges, we conclude that a magistrate court is included within the term "district court" under § 3771(d)(3). *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 222 (2008) (noting that courts' construction of a statutory term must "ensure that the statutory scheme is coherent and consistent"). Unlike the specific distinction Congress has drawn between the magistrate judge and the district court judge in § 3402, Congress has made no such distinction in § 3771 regarding petitions for a writ of mandamus. We see no basis, *sub silentio*, to draw such a distinction in the absence of a specific direction from Congress. To do so would create the absurd result that under § 3771(d)(3), a crime victim could petition from the denial of restitution if a district judge made the determination but could not do so if a magistrate judge made the same decision.

Boone's reading requires that when a magistrate judge declines to award restitution pursuant to § 636(a) and § 3401 in a petty offense case, a victim cannot exercise his

13

statutory rights under § 3771(d)(3) to seek appellate review of that decision. Boone points to no legal authority other than her tortured interpretation of § 3771(d)(3), which effectively negates the specific rights of crime victims guaranteed by the CVRA. Construing the statutes as Boone proposes directly contradicts Congress' express, unambiguous intent that regardless of whether the underlying offense is a petty offense, "[t]he *crime victim or the crime victim's lawful representative* [as well as] the attorney for the Government may assert" the rights to restitution provided under § 3771. § 3771(d)(1) (emphasis added).

For all these reasons, we reject Boone's argument and hold that we have subject matter jurisdiction over Brown's petition under § 3771(d)(3).

## B.

Next, we address Boone's argument that the petition lacks merit. In doing so, we review the lower court's restitution decision for abuse of discretion. *United States v. Leftwich*, 628 F.3d 665, 667 (4th Cir. 2010).

Before analyzing the merits of the petition, we review the scope of the applicable restitution statutes because "federal courts do not have the inherent authority to order restitution, but must rely on a statutory source" to do so. *United States v. Cohen*, 459 F.3d 490, 498 (4th Cir. 2006). Relevant here are two restitution enactments: the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, and the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A.[7] These statutes "impose different

---

[7] The CVRA is substantively different from the VWPA and the MVRA in that it "makes available to crime victims, among other things, procedural mechanisms to assert

14

requirements on the district court when it determines an award of restitution." *Leftwich*, 628 F.3d at 667. The key difference between them is that "an award of restitution under the VWPA is not mandatory," whereas "the MVRA mandates that the sentencing court order restitution in the full amount of the victim's loss when the defendant has been convicted of certain specified offenses." *Id.* at 668. As the parties concede and the lower court correctly held, the VWPA governs Brown's restitution request because Boone's offenses do not qualify as offenses that warrant mandatory restitution under the MVRA. *Cf.* 18 U.S.C. § 3663A(a)(1), (c).

To analyze the applicable restitution statutes, we first examine whether the sentencing court may award restitution under § 3563(b)(2) because Brown asked that restitution be imposed as a condition of Boone's probation. Under this provision, a court has discretion to order "restitution to a victim of the offense under section 3556" as a condition of probation. § 3563(b)(2). In turn, § 3556 states that "[t]he court, in imposing a sentence on a defendant who has been found guilty of an offense . . . may order restitution in accordance with section 3663" and follow the procedures set forth in § 3664. § 3556.

An award of restitution under § 3663 is discretionary, as this section states that the court "*may* order . . . that the defendant make restitution to any victim of [the] offense."

substantive rights in a defendant's criminal proceedings and on appeal, including rights as provided in the VWPA and MVRA." *Aguirre-Gonzalez*, 597 F.3d at 48 n.2; *see United States v. Kovall*, 857 F.3d 1060, 1065 (9th Cir. 2017) ("The CVRA provides mechanisms for enforcing a victim's rights under the Act."). Thus, the CVRA "provide[s] a right to petition the court of appeals for mandamus, grant[s] the government express power to assert crime victims' rights on appeal, [and] set[s] forth procedures by which victims may move to reopen sentences," whereas the VWPA and the MVRA do not. *See Monzel*, 641 F.3d at 543–44.

§ 3663(a)(1)(A) (emphasis added). The court's discretion under the VWPA, however, is not unfettered; instead, "[d]iscretion in ordering restitution is circumscribed by the procedural and substantive protections" of the statute. *Leftwich*, 628 F.3d at 667 (internal quotation marks omitted). The court, in "determining whether to order restitution," must consider "the amount of the loss sustained by each victim as a result of the offense," "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." § 3663(a)(1)(B)(i).

Nonetheless, "[t]o the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court may decline to make such an order." § 3663(a)(1)(B)(ii). Congress adopted this provision "to prevent sentencing hearings from becoming prolonged and complicated trials on the question of damages owed the victim," S. Rep. No. 97-532, at 31 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 2515, 2537, and so "that sentencing courts [do] not become embroiled in intricate issues of proof,"[8] *United States v. Reifler*, 446 F.3d 65, 136

---

[8] Several decisions cited herein address the complexity exception under the MVRA, but they are relevant here. Similar to the VWPA, the MVRA exempts sentencing courts from awarding restitution if "determining complex issues of fact related to the cause or amount of the victim's losses *would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.*" 18 U.S.C. § 3663A(c)(3)(B) (emphasis added); *cf.* § 3663(a)(1)(B)(ii). Because the balancing test required under the complexity exception of the MVRA is substantially similar to that under the VWPA, the decisions interpreting and applying the MVRA's complexity exception provide useful guidance in our § 3663(a)(1)(B)(ii) analysis. *See United States v. Randle*, 324 F.3d 550, 556 n.3 (7th Cir.

(2d Cir. 2006). Relying primarily on this rationale, the magistrate judge here held that determining restitution would complicate and prolong the sentencing process and thus denied Brown's request for restitution.

In making this determination, the court abused its discretion because it improperly failed to articulate the balancing analysis as required by § 3663(a)(1)(B)(ii) when restitution is denied. A court does not properly discharge its duty to conduct "a balancing test" under § 3663(a)(1)(B)(ii) unless it expressly "weigh[s] the need to provide restitution to a victim against the burden on the sentencing process posed by determining complex issues of fact." *United States v. Malone*, 747 F.3d 481, 486 (7th Cir. 2014); *United States v. Gushlak*, 728 F.3d 184, 192 (2d Cir. 2013) ("[T]he statute explicitly contemplates that the district court weigh against the burden of ordering restitution the victims' interests in receiving restitution."). In conducting this balancing test, the court must articulate its analysis because we require "district courts to make specific fact findings on those matters relevant to application of the VWPA." *United States v. Bruchey*, 810 F.2d 456, 458 (4th Cir. 1987). Thus, in applying § 3663(a)(1)(B)(ii), a court must (1) make fact findings specific to two statutory factors—"the need to provide restitution to a victim," and "the burden on the sentencing process posed by determining complex issues of fact"—and (2) then explicitly balance these two factors. *Malone*, 747 F.3d at 486.

_____

2003) ("Because of the similarity of the statutory language in the VWPA and MVRA, court decisions interpreting the language of the VWPA are helpful in construing the language of the MVRA.").

17

The magistrate judge acknowledged Brown's need for restitution and stated, as to his proffered proof of lost earnings, "I have no reason to not believe Mr. Brown." J.A. 126. The court went on to note, though, that it questioned the sufficiency of Brown's evidence, saying, "in my opinion there has got to be more than simply the victim's statement to award restitution in the amount of $20,000." J.A. 127. The magistrate judge then noted Brown's extensive medical expenses—although he did not seek restitution for these—and his disputed claim for lost earnings, and observed, "this is a forum which is so much less equipped to handle situations like this than a civil proceeding." J.A. 127.

After discussing case law on the difficulty of calculating lost *future* earnings, the court reiterated its concern

> about not just lost wages, but about future medical bills, future pain and suffering, future emotional distress. In a criminal context the Court will put its foot into the waters of restitution if things are readily and accurately ascertainable uncontested. We are contested here, and that is why this is just so not the forum to be dealing with these kinds of figures.

J.A. 129.

> The court then quoted the text of § 3663(a)(1)(B)(ii) and concluded:

> Mr. Brown is not without his day in court. He has a remedy. He has a civil remedy. And to order restitution in the amount that is being requested with the evidence that would give me the level of confidence and comfort in that I am being accurate would, in my opinion, complicate and prolong the sentencing process.
>      . . . I am going to decline to order, as a discretionary condition of probation, restitution in this matter.

J.A. 130.

While the court found certain facts relating to each of the statutory factors—the victim's need for restitution and the burden imposed on the sentencing court—it failed to

18

articulate how it balanced those factors to determine that restitution was unwarranted. By failing to do so, the court violated its duty under § 3663(a)(1)(B)(ii) to expressly weigh:

> the burden of adjudicating the restitution issue against the desirability of *immediate* restitution—or otherwise stated, a weighing of the burden that would be imposed on the court by adjudicating restitution in the criminal case against the burden that would be imposed on the victim by leaving him or her to other available legal remedies.

*United States v. Kones*, 77 F.3d 66, 68–69 (3d Cir. 1996). Put another way, the court abused its discretion by failing to state why the burden of complexity or delay in sentencing outweighed Brown's need for restitution. This abuse of discretion harmed Brown because he received none of the requested restitution to which he may be entitled under the VWPA. Accordingly, we grant the petition for mandamus, thereby vacating the order denying restitution, and remand the case for the magistrate judge to conduct and explain on the record its balancing analysis in determining whether to award restitution.

## C.

In light of some of the court's remarks and the parties' arguments on brief, we will exercise our discretion to address certain issues that are likely to recur upon remand. *United States ex rel. Drakeford v. Tuomey Healthcare Sys., Inc.*, 675 F.3d 394, 406 (4th Cir. 2012) ("[W]e note that our precedent is clear that we may address issues that are likely to recur on remand."). First, the lower court's reference to *Fountain*, 768 F.2d at 801–02, and its explanation of the difficulty in calculating restitution for *future* lost earnings, appears to have limited applicability when, as here, the requested restitution is limited to *past* lost earnings. While projecting future losses is inherently speculative, the same concern is

19

absent for earnings already lost. For that reason, *Fountain* should not be a guiding star for the lower court's balancing analysis on remand.

Next, Brown asserts that the sentencing court erroneously considered the availability of a civil remedy in deciding whether to award restitution. This argument lacks merit. Other circuits have concluded that in determining whether to deny restitution under § 3663(a)(1)(B)(ii), a court may consider the availability of other legal remedies. *See Kones*, 77 F.3d at 68–69 (holding that in applying § 3663(a)(1)(B)(ii), a court must consider "the burden that would be imposed on the victim by leaving him or her to other available legal remedies"). Specifically, the Tenth Circuit in *United States v. Gallant* observed the following:

> While the availability of other relief is deemed irrelevant to the process of calculating the *amount of* a restitution award [under the MVRA], it is not necessarily irrelevant to the *availability of* such an award under § 3663A. *The existence of pending civil litigation may in some cases be relevant to the balancing test established by [the MVRA's] complexity exception.*

537 F.3d 1202, 1254 (10th Cir. 2008) (final emphasis added). We agree with the Tenth Circuit's reasoning and hold that, in considering and balancing the statutory factors under § 3663(a)(1)(B)(ii), the court may consider, among other factors, the availability of alternative civil remedies for Brown's past lost earnings. That said, the court on remand "should not place great weight on this factor." *Id.* It is merely one factor for the court to balance and should not be the controlling factor in and of itself. Rather, "the primary consideration" of the complexity exception "is the burden that calculating restitution would place on the sentencing process." *Id.*

Last, the court below referenced Brown's need for compensation for his medical expenses despite the fact that Brown specifically denied any claim to medical expenses and requested restitution only for past lost earnings. In performing its § 3663(a)(1)(B)(ii) balancing analysis, the court should confine its review to what Brown requested—past lost earnings. Any consideration of unclaimed medical expenses is irrelevant.[9]

## III.

For the reasons stated above, Brown's petition for a writ of mandamus is granted and the case is remanded to the lower court for further proceedings consistent with this opinion.

*PETITION GRANTED*

---

[9] We express no view, and take no position, on whether Brown's motion for restitution should be granted. That matter is left to the lower court to determine in a manner consistent with this opinion on remand.